BETTIE B. SHERROD, Administratrix of the Estate of SYLVIA BIRTH, Deceased v. NASH GENERAL HOSPITAL, INC., and KENNETH C. THOMPSON, JR.

No. 387A97

(Filed 9 July 1998)

### 1. Appeal and Error § 206 (NCI4th)— notice of appeal—second Rule 59 motion—tolling of time

Plaintiff's second timely Rule 59 motion for a new trial extended the thirty-day limit specified in Rule 3(c) for giving notice of appeal where plaintiff's first oral motion asserted that the verdict was contrary to the weight of the evidence, and her subsequent written motion asserted the additional grounds (1) that the verdict and jury deliberations showed a manifest disregard of the court's instructions, (2) that a number of errors at trial to which plaintiff objected denied her a fair trial, (3) that there was jury misconduct, and (4) that there were delays and disruptions at trial. Therefore, the thirty-day time period for giving notice of appeal commenced when an order was entered ruling on the second motion for a new trial. N.C.G.S. § 1A-1, Rule 59; N.C. R. App. P. 3(c).

### 2. Trial § 169 (NCI4th)— defendant physician as expert—ruling in jury's presence—prejudicial error

While it was proper for the trial court to rule that defendant physician could testify as an expert in this medical malpractice action, the trial court committed prejudicial error by ruling in the presence of the jury that it in fact and law found defendant physician to be an expert in the field of general psychiatry and that he would be allowed to testify on matters touching upon his expertise. Defendant physician's level or degree of competence was directly at issue in the case, and the court's announcement might well have influenced the jury in its decision that defendant was not negligent in the death of decedent.

Chief Justice MITCHELL dissenting in part and concurring in part.

Justice ORR joins in this dissenting and concurring opinion.

Appeal by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 126 N.C. App. 755, 487 S.E.2d 151 (1997), affirming a judgment for defendants entered by

SHERROD v. NASH GENERAL HOSPITAL

[348 N.C. 526 (1998)]

Butterfield, J., on 7 December 1995 in Superior Court, Nash County. On 29 October 1997, this Court allowed defendant Thompson's petition for discretionary review of an additional issue. Heard in the Supreme Court 12 February 1998.

*Leland Q. Towns for plaintiff-appellant and -appellee.*

*Baker, Jenkins, Jones & Daly, P.A., by Kevin N. Lewis, for defendant-appellant and -appellee Thompson.*

LAKE, Justice.

This is a medical malpractice case which presents two issues for determination: first, whether the Court of Appeals erred in holding that plaintiff's appeal was timely filed; and second, whether the trial court committed prejudicial error by ruling in the presence of the jury that defendant Thompson was accepted by the court as an expert and would be allowed to testify as an expert witness in the field of general psychiatry.

The Court of Appeals held that plaintiff's appeal was timely filed, and the majority held that the trial court did not commit reversible error when, in the presence of the jury, it declared defendant Thompson to be an expert witness. This Court allowed defendant Thompson's petition for discretionary review as to the notice of appeal issue, and plaintiff appeals from the dissent below on the expert witness issue. For the reasons hereinafter stated, we affirm the Court of Appeals' holding that plaintiff's appeal was timely filed, and we reverse as to its conclusion on the second issue that the trial court did not commit prejudicial error in declaring, in the presence of the jury, the expertise of the witness.

In this case, the plaintiff brought suit on behalf of the estate of Sylvia Birth against both Nash General Hospital, Inc. (NGH) and Kenneth C. Thompson, Jr. The complaint asserted five specific allegations of negligence against defendant hospital and seven specific allegations of negligence against defendant Thompson and asserted that the negligence of each defendant was a proximate cause of the death of Sylvia Birth.

The record reflects the following evidence was before the trial court. On 30 August 1990, the deceased, sixty-five-year-old Sylvia Birth, was admitted to NGH upon the recommendation of her primary treating physician, Dr. Kenneth C. Thompson, Jr. Ms. Birth had stopped eating and sleeping, and her behavior had become erratic.

Prior to her arrival at NGH, Ms. Birth had been taking the following prescribed medications: 100 milligrams of Imipramine a day; 20 milligrams of Diazepam (Valium) a day; and 40 milligrams of Propranolol (Inderal) twice daily. After Ms. Birth's admission at NGH, Dr. Thompson prescribed Haldol, 5 milligrams; Ativan, 1 milligram; and Diazepam, 5 milligrams twice a day and 10 milligrams at bedtime. He continued her Imipramine, increasing her dosage to 150 milligrams, and increased Inderal to 80 milligrams twice a day. Additionally, he prescribed Mellaril, 50 milligrams by mouth, every eight hours and then as needed; Haldol, 2 milligrams; and Ativan, 1 milligram every four hours as needed.

During Ms. Birth's seventeen-day stay at NGH, her physical and mental condition worsened, and she became increasingly confused, agitated, disoriented and delusional. Ms. Birth was often placed in physical restraints, as she was combative and moved continuously. Dr. Thompson did not order diagnostic tests or consult with any other medical specialist. On 15 September 1990, Ms. Birth was transferred, pursuant to Dr. Thompson's orders, by a deputy sheriff from NGH to Cherry Hospital in Goldsboro. Ms. Birth died on 16 September 1990.

At trial, one of plaintiff's expert witnesses, Dr. Thomas Clark, testified that he performed an autopsy on Ms. Birth and first concluded that she died from Imipramine poisoning but later concluded that multiple drug overdoses caused her death. Dr. Clark also testified that the manner of death was suicide based on his opinion that the drugs in her blood were elevated beyond what he thought she could reasonably have expected to get from taking the drugs in the amounts that were prescribed. Dr. K.N. Murthy testified as an expert that he admitted Ms. Birth at Cherry Hospital; that upon her arrival she was agitated, uncontrolled and disoriented; and that he ordered a physical examination and lab work and that all medications be withheld. Several witnesses from Cherry Hospital testified for plaintiff that while Ms. Birth was at Cherry Hospital, she did not receive any medications other than two doses of Ativan and that she did not bring any medications with her. Cherry Hospital records also indicated that Ms. Birth received no medication other than two doses of Ativan while at the hospital.

Dr. Harold C. Morgan, an expert for plaintiff, testified that, in his opinion, Dr. Thompson was negligent in his treatment of Ms. Birth in that he failed to exercise reasonable care and diligence in his care of Ms. Birth, that he failed to comply with the standard of care required

SHERROD v. NASH GENERAL HOSPITAL

[348 N.C. 526 (1998)]

by law, and that his negligence proximately caused Ms. Birth's death. Specifically, Dr. Morgan testified that Dr. Thompson failed to conduct adequate diagnostic work, overprescribed medication and improperly combined the same class of medication, failed to consult with other specialists, and failed to recognize that Ms. Birth was in a drug-induced delirium. Dr. Morgan also testified that it was unreasonable for Dr. Thompson to base his diagnosis of Ms. Birth on her past hospitalizations because Ms. Birth's 30 August 1990 hospitalization was different from previous hospitalizations. This testimony included the observation that in prior hospitalizations, in contrast to her last admission, Ms. Birth had responded quickly to medications and treatment, had shown auditory hallucinations, and had only been on a total of two or three different medications at lower dosages. William T. Sawyer, a licensed pharmacist and faculty member of UNC School of Pharmacy, and a board-certified pharmacotherapist, testified for plaintiff that Ms. Birth's drug overdose was likely caused by the accumulation of drugs administered during her stay at NGH.

Defendant NGH presented testimony tending to show that the care rendered by NGH nurses was within the standard of care as applied to nurses. Defendant Thompson presented several medical doctors who, in the presence of the jury, were tendered and accepted by the trial court as experts, and who then testified on behalf of defendant Thompson. Dr. Thompson testified extensively in his own behalf, as an expert, that his care of Ms. Birth complied with all generally accepted standards of care within the practice for psychiatrists, that he did not believe she was in a drug delirium, and that there were no signs of overmedication. He testified that there was nothing different about Ms. Birth's condition on 30 August 1990 upon her admission to NGH than in past admissions to the hospital. Dr. Thompson further testified that Ms. Birth ate better and took her fluids better than previously, and that he prescribed Mellaril to Ms. Birth despite her extreme sensitivity to this drug in the past. Additionally, Dr. Thompson testified that although he realized on 11 September 1990 that Ms. Birth was showing no improvement and that the medications were not helping, he did nothing different with respect to her treatment.

On 6 December 1995, the jury answered the liability issue in defendants' favor, finding neither defendant negligent in the death of the decedent. Plaintiff, in open court, orally moved that the verdict be set aside as contrary to the weight of the evidence and the law and for a new trial, which the trial court then orally denied. In so doing,

SHERROD v. NASH GENERAL HOSPITAL

[348 N.C. 526 (1998)]

the trial court stated that "under the new rules I believe civil litigants have thirty days in which to file post-trial motions and you may avail yourself of that rule." The trial court entered judgment in accordance with the jury's verdict. On 15 December 1995, plaintiff filed a written motion for a new trial, pursuant to Rule 59 of the Rules of Civil Procedure, contending that: (1) the jury disregarded the instructions by the trial court, (2) the verdict was contrary to the law and the weight of the evidence, (3) errors of law occurring at trial denied plaintiff a fair trial, and (4) there was juror misconduct. On 15 December 1995, plaintiff also filed a motion for a new trial based on delays and disruptions at trial. These motions were heard before Judge Louis B. Meyer who ruled, on 21 March 1996, that they should be dismissed and in the alternative denied. In denying these motions, Judge Meyer stated:

> The hearing and rulings on these motions have absolutely nothing to do with your right of appeal and doesn't impede it in any way. . . . I think these matters that [are] included in your motions concerning the verdict being inconsistent with the evidence and contrary to the weight, ought to be handled on the appeal of the case.

On 27 March 1996, plaintiff filed notice of appeal from the verdict and judgment and the denial of her post-trial motions. On 16 April 1996, defendant Thompson, and on 18 April 1996, defendant NGH, moved to dismiss plaintiff's appeal for failure to timely file notice of appeal pursuant to Rule 3 of the Rules of Appellate Procedure. Plaintiff made a motion pursuant to Rule 60(b)(6) of the Rules of Civil Procedure to set aside Judge Butterfield's ruling denying plaintiff's oral motions. These motions were heard 9 September 1996 by Judge Howard E. Manning, Jr., who denied defendants' motions to dismiss the appeal and allowed plaintiff's motion. In so doing, the trial court stated that "plaintiff should be relieved from Judge Butterfield's ruling of December 6, 1995 denying plaintiff's oral Motion For A New Trial and Judgment Notwithstanding the Verdict because of the trial court's erroneous instruction regarding plaintiff's right to file written post-trial motions."

With respect to this first issue, Rule 3 of the North Carolina Rules of Appellate Procedure provides:

> Appeal from a judgment or order in a civil action or special proceeding must be taken within 30 days after its entry. The running of the time for filing and serving a notice of appeal in a civil

action or special proceeding is tolled as to all parties . . . by a timely motion filed by any party pursuant to the Rules of Civil Procedure . . . , and the full time for appeal commences to run and is to be computed from the entry of an order upon any of the following motions:

. . . .

(4) a motion under Rule 59 for a new trial.

N.C. R. App. P. 3(c).

[1] Defendant Thompson contends that plaintiff's second motion for a new trial cannot extend the thirty-day limit specified under Rule 3 for giving notice of appeal. We disagree. Plaintiff's subsequent Rule 59 motions of 15 December 1995 asserted additional, substantially different grounds for a new trial than those asserted in her first oral motion on 6 December 1995. Plaintiff's first motion asserted that the verdict was contrary to the weight of the evidence. Her subsequent motions asserted four additional grounds: (1) that the verdict and jury deliberations showed a manifest disregard of the instructions of the court, (2) that there were a number of errors of law that occurred at trial and were objected to by the plaintiff which denied her a fair trial, (3) that there was jury misconduct, and (4) that there were delays and disruptions at trial. When a party files a subsequent Rule 59 new-trial motion asserting different grounds as basis for a new trial, that party should still be entitled to application of the tolling provision of Rule 3(c). It is clear from a reading of Rule 59(a) that the grounds set forth there contemplate situations or circumstances which may arise or become known *after* a party has made the usually perfunctory motions for a new trial at the end of the trial. Rule 59(b) gives a party ten days after entry of the judgment to move for a new trial, and plaintiff here filed her subsequent written motions within nine days. Plaintiff thus filed "a timely motion . . . under Rule 59 for a new trial," pursuant to Rule 3(c), and since plaintiff is therefore entitled to the benefit of the Rule 3(c) tolling provision, the thirty-day time period did not commence until 21 March 1996 when Judge Meyer entered his order ruling on these motions. Accordingly, we hold that plaintiff's appeal was timely filed and affirm the Court of Appeals on this issue.

[2] We turn now to the second issue: whether the trial court committed prejudicial error when it declared in the presence of the jury

SHERROD v. NASH GENERAL HOSPITAL

[348 N.C. 526 (1998)]

that defendant Thompson was found by the court to be an expert in the field of general psychiatry and would be allowed to so testify.

At the focal point of the trial (certainly for the defense), and following the testimony on behalf of defendant Thompson of other medical doctors who, in the presence of the jury, were recognized by the trial court as experts, defense counsel called Dr. Thompson as a material witness for his own defense. After being questioned before the jury about his education, experience and training, defendant Thompson was tendered to the court as a medical expert specializing in the field of psychiatry. The trial court then called counsel to the bench, and at the ensuing bench conference, the following stipulation was placed in the record:

> The parties to this action hereby agree and stipulate that at the trial of the above-captioned action, Ron Baker, attorney for Dr. Kenneth C. Thompson, Jr., tendered Dr. Kenneth C. Thompson Jr. as a duly qualified medical expert specializing in the field of psychiatry. Before making a ruling, Superior Court Judge G.K. Butterfield, Jr., held a bench conference on whether it was proper for the court to recognize Dr. Kenneth C. Thompson, Jr., as a duly qualified medical expert in the presence of the jury. After hearing arguments from all three attorneys, the court concluded that it was proper to recognize Dr. Thompson as a duly qualified medical expert specializing in the field of psychiatry. Plaintiff-appellant objected to the trial court recognizing Dr. Thompson, in the presence of the jury, as a duly qualified medical expert specializing in the field of psychiatry and excepted to the ruling.

In the presence of the jury, the trial court then declared, "I find that the witness is an expert in the field of general psychiatry. He will be permitted to testify as to such matters touching upon his expertise."

The precise issue here presented has been determined by this Court in *Galloway v. Lawrence*, 266 N.C. 245, 145 S.E.2d 861 (1966). There, this Court held that in a medical malpractice case where a defendant medical doctor is testifying in his own defense, it is prejudicial error for the trial court to make a statement finding, in the presence of the jury, that such defendant "is a medical expert." *Id.* at 250, 145 S.E.2d at 866. This Court stated in *Galloway*:

> The ruling should have been put into the record in the absence of the jury for it was an expression of opinion by the court with ref-

erence to the *professional qualifications* of the defendant. It might well have affected the jury in reaching its decision that the child was not injured by the negligence of the defendant. There was no error in permitting the defendant to testify as an expert witness, for there was ample evidence to support the finding of his qualifications as such and his being a party does not disqualify him. The court's finding should not, however, have been stated in the presence of the jury.

*Id.* (citations omitted) (emphasis added).

In so holding, this Court was applying the statutory mandate, then set forth in N.C.G.S. § 1-180 and now carried forward in N.C.G.S. §§ 15A-1222, 15A-1232 and 1A-1, Rule 51, that "a judge *shall not* give an opinion as to whether or not a fact is fully or sufficiently proved." N.C.G.S. § 1A-1, Rule 51(a) (1990) (emphasis added). In this regard, this Court in *Galloway* quoted from *Upchurch v. Hudson Funeral Home Inc.*, 263 N.C. 560, 140 S.E.2d 17 (1965), as follows:

"The slightest intimation from the judge as to the weight, importance or effect of the evidence has great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial."

*Galloway*, 266 N.C. at 250, 145 S.E.2d at 866 (quoting *Upchurch*, 263 N.C. at 567, 140 S.E.2d at 22).

In the case *sub judice*, the question of defendant Thompson's medical expertise was not simply a question of fact, it was one of *the* most critical questions of fact to be decided by the jury—one which bore directly, and with significant impact, on the ultimate issue for the jury. In the first of seven specific allegations of negligence, the complaint in this case states that defendant Thompson "(a) failed to possess the degree of *professional learning, skill and ability* which others similarly situated ordinarily possessed." (Emphasis added.) Thus, defendant Thompson's level or degree of competence was directly at issue. Against this allegation by the plaintiff, the trial court ruled and declared to the jury: "*I find* that the witness *is an expert* in the field of general psychiatry. He will be permitted to testify as to such matters touching upon *his expertise."* (Emphasis added.) With this ruling and introduction to the jury by the trial court, defendant Thompson then proceeded to testify that his treatment of Sylvia Birth fully met the standard and was proper in all respects.

When this statement was made to the jury, the trial court was not merely expressing or intimating an opinion as to the facts or evidence; rather, the trial court was actually making, additionally, a legal ruling, a conclusion of law which the jury was duty-bound to accept. This ruling in the instant case was enhanced before the jury by the trial court's calling for a bench conference and the entry of the stipulation, preceding the court's pronouncement of its finding. In this regard, this Court stated in *Galloway,* as to inadvertent comments by the trial court in the presence of the jury:

> [T]hey dealt with the very questions which the jury was called upon to decide and were clearly prejudicial to the plaintiffs. The *professional ability and skill* of the defendant and whether or not he visited his patient . . . are questions for the jury, not for this Court or for the judge presiding at the trial. We express no opinion as to these matters and the trial judge is forbidden to do so by the statute.

*Galloway,* 266 N.C. at 251, 145 S.E.2d at 866 (emphasis added).

Accordingly, we conclude that while it was entirely proper for the trial court to rule that defendant Thompson could testify as an expert, with the legal parameters and privileges incident to such ruling, it was prejudicial error for the trial court to announce to the jury that it *in fact and law* found defendant Thompson to be an expert. Such announced ruling might well have influenced the jury in its decision that defendant Thompson was not negligent in the death of decedent.

The decision of the Court of Appeals is therefore affirmed with respect to the first issue and is reversed with regard to the second issue, and this case is remanded to the Court of Appeals for further remand to the Superior Court, Nash County, for a new trial.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Chief Justice MITCHELL dissenting in part and concurring in part.

I believe that *Galloway v. Lawrence,* 266 N.C. 245, 145 S.E.2d 861 (1966), the precedent relied upon by the majority in this case, reached the correct result. With regard to the issue of whether it was error for the trial court to qualify the defendant-doctor as an expert medical witness in the presence of the jury, however, I respectfully suggest that *Galloway* reached an erroneous conclusion of law and

SHERROD v. NASH GENERAL HOSPITAL

[348 N.C. 526 (1998)]

then erroneously applied that conclusion to the specific facts presented by that case.

In *Galloway*, the primary question of fact for the jury was whether the defendant-doctor had gone to the hospital to attend to his child-patient in a timely fashion. The defendant testified that he had, but the charge nurse at the hospital testified that she had not seen him in the hospital at the time in question. In the presence of the jury, the trial court stated: "Well, of course, now, the evidence with reference to the doctor going to the hospital is that he went there. . . . There is no evidence that he did not go there . . . ." *Id.* at 249, 145 S.E.2d at 865. Additionally, in *Galloway*,

> defendant testified as a witness in his own behalf. His counsel tendered him "as a medical expert." Plaintiffs' counsel stated that he did not wish to ask the defendant any questions; that is, he did not wish to question the defendant's qualifications to express opinions as an expert witness. The court, in the presence of the jury, said: "Let the record show that the Court finds as a fact that [defendant] is a medical expert, to wit: an expert physician in surgery."

*Id.* at 250, 145 S.E.2d at 865-66. This Court awarded plaintiffs a new trial on the ground that *both* of the above-quoted statements by the trial court

> dealt with the very questions which the jury was called upon to decide and were clearly prejudicial to the plaintiffs. The professional ability and skill of the defendant and whether or not he visited his patient following the telephone call from the nurses are questions for the jury, not for this Court or for the judge presiding at the trial.

*Id.* at 251, 145 S.E.2d at 866.

I believe that the Court was incorrect in stating in *Galloway* that, on the facts of that case, the "professional ability and skill of the defendant" was a question which the jury was called upon to decide. The plaintiffs in *Galloway* raised no issue in their pleadings or at trial with regard to the defendant's professional qualifications. The only issue presented by the plaintiffs and before the jury in *Galloway* was whether the defendant exercised reasonable diligence in the application of his professional knowledge and skill to the particular patient's care. This Court's conclusion and holding, to the extent it was based on this reasoning, was erroneous. For this reason, I believe that the

Court misapplied the law it announced in *Galloway* to the facts of that case. However, the Court reached the correct result in awarding the plaintiffs a new trial in *Galloway* due to the trial court's clearly erroneous expression of its opinion with regard to whether the doctor had gone to the hospital and applied his knowledge and skills on behalf of his patient, the very issue the jury was to decide.

Further, I disagree with the conclusion of law in *Galloway* that a trial court's ruling in the presence of the jury allowing a witness to testify as an expert witness will affect a jury in reaching its decision as to his professional qualifications. More to the point, I think this is particularly unlikely in a case such as the one facing us here, where almost all of the witnesses were declared to be medical experts by the trial court in the presence of the jury. First, there is something less than completely candid about requiring a trial court to accept a defendant as an expert witness and allow him to give testimony as an expert but then conceal this fact from the jury. This is particularly troubling in a case such as the present one in which the jury has been informed that the trial court has declared all of the other witnesses to be experts, and they are testifying as such. More importantly, I believe that the rule applied by the majority, at least on the facts of this case, is fundamentally unfair and may deny defendant due process and equal protection of law under the United States Constitution and under the Law of the Land Clause of the North Carolina Constitution. Accordingly, I dissent from the decision of the majority of this Court. I would affirm the decision of the majority in the Court of Appeals on this issue, which held that the trial court did not err in this regard.

Recognizing, however, that the rule announced and applied by the majority today will govern future cases, I suggest one possible practical solution to avoid the constitutional problem I see as possibly arising from the opinion of the majority. If, as the majority appears to believe, the act of the trial court in declaring a witness an expert witness has such a profound effect upon jurors, it seems fundamentally unfair to allow one party to enjoy the full effects of such a powerful statement with regard to each of its witnesses, while depriving the other party of a similar declaration by the trial court. Perhaps the fairest and best course for trial courts in light of the holding of the majority would be one by which the trial courts made their findings and rulings as to *all* expert witnesses in the absence of the jury. The witnesses could still state their qualifications before the jury and give expert testimony, but the jury would not be told that any

of them were found by the court to be experts. In short, it seems to me that the only fundamentally fair procedure would be to apply the same rule to experts for both parties. The sauce to be used on the goose should also be used on the gander.

I concur only in that part of the decision of the majority concluding that plaintiff's appeal was timely filed and affirming the Court of Appeals on this issue.

Justice ORR joins in this dissenting and concurring opinion.