FLOYD M. ANDREWS, Plaintiff v. DAVID R. CARR, M.D. and SALEM SURGICAL
ASSOCIATES, P.A., Defendants

No. COA99-265

(Filed 2 November 1999)

**1. Medical Malpractice— contributory negligence—failure to follow medical advice—acts subsequent to negligence—not bar to recovery—mitigation of damages**

The trial court did not err in granting plaintiff-patient's directed verdict motion on the issue of contributory negligence because plaintiff's post-surgery activities after defendant-doctor's negligent treatment are properly considered in mitigation of plaintiff's damages and cannot constitute a bar to his claim.

**2. Medical Malpractice— expert testimony—standard of health care—negligent treatment—causation**

Although a medical expert did not qualify under Rule 702 to offer opinion testimony with regard to the standard of health care at issue in this negligent treatment case, the trial court did not err in allowing the expert to testify because his testimony related to causation.

Appeal by defendants from judgment filed 22 July 1998 and from order filed 28 September 1998 by Judge Melzer A. Morgan, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 21 September 1999.

*Kirby & Holt, L.L.P., by C. Mark Holt, for plaintiff-appellee.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Kevin B. Cartledge, for defendant-appellants.*

GREENE, Judge.

David R. Carr, M.D. (Dr. Carr) and Salem Surgical Associates, P.A. (collectively, Defendants) appeal a judgment against them in the amount of $375,000.00 after a jury found that Floyd M. Andrews (Plaintiff) was injured by Defendants' negligence.

Dr. Carr performed a bilateral hernia surgery on Plaintiff on 13 May 1996 at Memorial Park Hospital in Winston-Salem, North Carolina. Dr. Carr utilized an open surgical procedure with direct visualization of the operative field. Dr. Carr's plan was to reduce and

repair the hernia on the right side, utilizing Marlex mesh to provide support to the surgically repaired area, and then to do the same on the left side. The procedure began with Plaintiff under sedation but it was eventually converted to general anesthesia.

As part of the surgery, Dr. Carr planned to identify the spermatic cord on the right side and dissect around it to release and move it allowing him access to the hernial sac, which had descended into Plaintiff's scrotum. At that point in the surgery, Dr. Carr lost his point of anatomical reference. Dr. Carr confused Plaintiff's penis for his spermatic cord and dissected around the penis releasing the surrounding skin. This dissection went along the shaft of the penis where his dissection instrument exited the body causing a cut on the side of the penis.

After freeing the spermatic cord by dissection, part of Dr. Carr's surgical plan was to place a rubber tube called a penrose drain around the spermatic cord pulling it out of the way to access the hernia. Instead of pulling the spermatic cord away, Dr. Carr actually pulled Plaintiff's penis structure out of the dissected skin. Realizing what he had done, Dr. Carr then put Plaintiff's penis back into place and closed the open wound on the penis by suture. Dr. Carr continued with the hernia repairs, but because his surgical instrument had left the sterile operative field by exiting the body, Dr. Carr decided not to utilize mesh in the operation for fear he had created a risk of infection.

After awakening from surgery, Dr. Carr told Plaintiff he had cut his penis. He, however, did not tell Plaintiff about putting the drain around his penis and the dissection involved or that the cut came from the inside out. He also did not tell Plaintiff he had abandoned his plan to use mesh because of his fear he had created an avenue for infection. Plaintiff was given post-surgical instructions from Dr. Carr to refrain from sexual activity and from lifting any weight of more than twenty pounds for at least six weeks.

Plaintiff was released to go home within twenty-four hours after the surgery but saw Dr. Carr at his office for several post-operative visits on 20 May, 4 June, 12 June, and 26 June 1996.

Medical records show that on the 12 June 1996 visit, Plaintiff told Dr. Carr that the swelling in his scrotum was doing much better when he "did sit-ups." Plaintiff also testified he had engaged in sexual relations at the end of July or the beginning of August of 1996. Dr. Carr

again informed Plaintiff he should not engage in heavy lifting, exercise, or sexual activity until his wounds were fully healed and such activity could slow the healing process and increase the risks of infection, swelling, and additional hernia complications.

On 24 September 1996, Craig Donatucci, M.D. (Dr. Donatucci) performed surgery on Plaintiff to release his entrapped penis and to remove scar tissue and a draining sinus tract in the area of the dissection. This surgery was necessary because of the scar tissue that had formed around the shaft of Plaintiff's penis as a result of Dr. Carr's dissection.

Plaintiff testified that the surgery performed at Duke University by Dr. Donatucci only partially relieved the entrapment of his penis. Since that time, Plaintiff has experienced the following concerning his penis: lack of sensation, erectile dysfunction, and tingling pain. Plaintiff is unable to have sexual intercourse and has difficulty controlling his urine flow due to numbness. Part of Plaintiff's supra-pubic fat pad and his superficial dorsal vein are missing as a result of the dissection. Plaintiff has two scars on his penis and has to use a vacuum device prescribed at Duke University to aid erections.

William Boyce, M.D. (Dr. Boyce), was tendered by Plaintiff as an expert witness. Dr. Boyce is retired and is not currently engaged in clinical practice or professional teaching. In pertinent part, he testified in response to a question from Plaintiff's counsel, as follows:

Q. Do you have an opinion about whether the laceration in the skin of the penis during the hernia operation, whether or not that was a cause of that infection?

. . . .

A. Opinion is—*I don't know how well it was prepared. I wasn't there and it isn't described in the literature, but it certainly was draped out of the field. That means the sterile field in which the operation was occurring. And it—it—to have a laceration out there of an unknown length of time was certain to have introduced organisms in—into the wound.* (emphasis added).

Defendant made a motion to strike this statement and that motion was denied by the trial court. Dr. Boyce went on to state that the laceration to Plaintiff's penis by Dr. Carr was a cause of the infection.

Dr. Carr and his experts, Sigmund Tannenbaum, M.D. (Dr. Tannenbaum) and Matthew Martin, M.D. (Dr. Martin), all testified that Plaintiff's damages were caused by an infection at the surgical site unrelated to either the nick or the use of the penrose drain on Plaintiff's penis during surgery. Dr. Tannenbaum testified that the performance of sit-ups by Plaintiff definitely would have contributed to the infection, which caused his post-operative problems. Dr. Tannenbaum also testified that if Plaintiff engaged in sexual activity before his surgical hernia wound had completely healed, this would have increased the chances of developing an infection at the surgical site. Dr. Martin testified that Plaintiff's post-operative exercise and sexual activities could have contributed to his post-operative complications.

At the end of Defendants' evidence, Plaintiff moved for a directed verdict on the issue of negligence and contributory negligence. The motion for directed verdict on the issue of negligence was denied and the motion for directed verdict on the issue of contributory negligence was granted. The trial court then instructed the jury regarding mitigation of damages:

> Evidence has been received in this case tending to show that Floyd M. Andrews failed to keep appointments with Salem Surgical Associates and failed to follow instructions regarding exercise and sexual intercourse.

> I instruct you that a party injured by the negligence of another is required to use ordinary care to see that his injury is treated and cared for. He must try to get well. He must keep the harmful consequences of his injury to a minimum if he can do so by reasonable diligence. A party is not permitted to recover for damages that he could have avoided by using means which a reasonably prudent person would have used to cure his injury or alleviate his pain. However, a party is not deprived of recovery for damages that he could have avoided unless his failure to avoid those damages was unreasonable.

> If you find that a physician advised the [P]laintiff to return for appointments or not exercise or not engage in sexual intercourse, you would not necessarily conclude that the [P]laintiff acted unreasonably in not following these instructions. In determining the reasonableness or unreasonableness of the [P]laintiff's conduct, you must consider all of the circumstances as they appear to the [P]laintiff at the times of such conduct.

ANDREWS v. CARR

[135 N.C. App. 463 (1999)]

If you find by the greater weight of the evidence that the [P]laintiff failed to use ordinary care to see that his injury was treated or cared for and thereby keep the harmful consequences of his injury to a minimum, if he can [sic] do so by reasonable diligence, then you would not award damages to the Plaintiff, Floyd M. Andrews, for those consequences that you find he would have avoided by using means which a reasonably prudent person would have used to cure his injury or alleviate his pain.

Plaintiff made a post-trial motion for an award of attorneys' fees pursuant to Rule 37(c) of the North Carolina Rules of Civil Procedure, because Defendants failed to admit to one of Plaintiff's requests for admissions. On 27 April 1998, Plaintiff served Defendants with a set of requests for admissions. The tenth request for admission stated as follows: "10. That the injury to the plaintiff's penis which occurred during the operation named 'Bilateral inguinal hernia repairs with Bassini repair' which Dr. Carr performed on plaintiff on May 13, 1996 was caused by the negligence of Dr. Carr." Defendants denied the request. Plaintiff's motion for an award of attorneys' fees was subsequently denied by the trial court. Plaintiff cross-assigned as error the trial court's denial of this motion.

The issues are whether: (I) the failure of a patient to follow medical advice subsequent to negligent medical treatment constitutes contributory negligence; and (II) Dr. Boyce offered standard of care testimony.

I

[1] A directed verdict for the plaintiff on the issue of his contributory negligence must be sustained by the appellate court unless there is substantial evidence the plaintiff's negligence was a proximate cause of his injuries. *See Cobb v. Reitter*, 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). If, therefore, there is relevant evidence that a reasonable mind might accept as adequate to support the elements of contributory negligence, the trial court must deny plaintiff's motion and allow the issue of contributory negligence to go to the jury.

"Contributory negligence . . . is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury

ANDREWS v. CARR

[135 N.C. App. 463 (1999)]

of which the plaintiff complains." *Jackson v. McBride*, 270 N.C. 367, 372, 154 S.E.2d 468, 471 (1967). Thus, "[w]hen a patient's negligent conduct occurs subsequent to the physician's negligent treatment . . . , recovery by the patient should be mitigated and not completely defeated pursuant to a contributory negligence theory." *Cobo v. Raba*, 125 N.C. App. 320, 324, 481 S.E.2d 101, 104 (1997), *aff'd*, 347 N.C. 541, 495 S.E.2d 362 (1998) (citations omitted) (activities of patient took place prior to and contemporaneously with physician's treatment and thus constituted contributory negligence); *see McCracken v. Smathers*, 122 N.C. 799, 805, 29 S.E. 354, 356 (1898) (when liability established for malpractice, proof that patient disobeyed doctor's orders and aggravated the injury, after liability was incurred, does not discharge liability; but simply goes to mitigation of damages); *see also Powell v. Shull*, 58 N.C. App. 68, 77, 293 S.E.2d 259, 264, *disc. review denied*, 306 N.C. 743, 295 S.E.2d 479 (1982) (patient's failure to keep appointments with treating physician did not constitute contributory negligence when failure occurred after doctor's negligent treatment); *cf. McGill v. French*, 333 N.C. 209, 220, 424 S.E.2d 108, 114-15 (1993) (patient's failure to keep appointments and report symptoms to treating physician, occurring simultaneous with treating physician's negligence, constituted contributory negligence).

In this case, the jury found and Defendants do not now contest they were negligent in performing the hernia operation,[1] when a dissection occurred outside of the operative field and into Plaintiff's penis. Defendants, however, do now contend there is substantial evidence Plaintiff was also negligent when he, after the surgery and against the advice of Defendants, performed sit-ups and had sexual intercourse. Consequently, Defendants contend the issue of Plaintiff's contributory negligence should have gone to the jury.

Assuming the post-surgery activities of Plaintiff did contribute to his injuries, they cannot constitute contributory negligence because these activities occurred *subsequent* to Dr. Carr's negligent treatment. Any injuries Plaintiff caused to himself as a result of his failure to follow Dr. Carr's post-negligence treatment advice are properly considered in mitigation of his damages and cannot constitute a bar to the claim. The trial court, therefore, properly allowed Plaintiff's motion for directed verdict on Defendants' defense of contributory negligence and properly instructed on mitigation of damages.

1. Defendants did contest their negligence at trial, but do not raise that issue before this Court.

**[2]** Defendants argue the trial court erred in allowing Dr. Boyce to testify regarding the appropriate standard of health care in violation of Rule 702 of the North Carolina Rules of Evidence. We disagree.

There is no dispute that Dr. Carr's conduct would constitute negligence if his care "was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities . . . ." N.C.G.S. § 90-21.12 (1997). It is also undisputed that a person is not permitted to offer expert testimony on the appropriate standard of care unless he qualifies under the provisions of Rule 702(b)(2) of the Rules of Evidence. N.C.G.S. § 8C-1, Rule 702(b)(2) (Supp. 1998).

In this case Dr. Boyce did not qualify under Rule 702 to offer opinion testimony with regard to the standard of health care at issue and he did not offer such evidence. His testimony, which has been questioned by Defendants, related to causation and it is not disputed that he was qualified to offer causation testimony.

We have carefully reviewed and reject the remaining arguments made by Defendants. We also have reviewed and overrule Plaintiff's cross assignment of error.

No Error.

Judges WALKER and HUNTER concur.