RIADH KATY, Administrator of the Estate of AZIZA KATY, Plaintiff
v.
MICHAEL JOHN CAPRIOLA, M.D., JOHN DAVID RISER, P.A., KEVEN ROBERT CHUNG, M.D., and MCDOWELL EMERGENCY PHYSICIANS, P.L.L.C., Defendants

No. COA12-625

Filed 16 April 2013

1. **Witnesses—standard of care—physician's assistant—testimony by physician**

The trial court abused its discretion in a medical malpractice action by excluding a doctor's standard of care opinion concerning a physician's assistant where the doctor, although not formally recognized as an expert, had the necessary educational and professional background and had been permitted to offer a standard of care opinion as to his own care of the deceased. The exclusion was prejudicial because of plaintiff's closing argument and because the witness was defendant's supervisor.

2. **Medical Malpractice—contributory negligence—failure to seek further treatment**

In a medical malpractice case that was remanded for a new trial on another issue, the trial court erred in granting a directed verdict in favor of plaintiff on the issue of contributory negligence.

The deceased did not seek further medical treatment, contrary to explicit instructions, when her condition continued to deteriorate.

**3. Medical Malpractice—special instruction—proximate cause —chance of recovery**

In a medical malpractice action in which a new trial was granted on other grounds, the trial court erred by not giving a requested special instruction that plaintiff had the burden to prove more than a mere increased chance of recovery and survival in order to establish proximate cause.

**4. Evidence—collateral source rule—spouse's remarriage— excluded**

In a medical malpractice action in which a new trial was granted on another issue, the trial court properly excluded evidence of the surviving spouse's remarriage under the collateral source rule.

**5. Evidence—opened door—remand on other grounds— argument not considered**

An argument about whether the door was opened to evidence otherwise properly excluded was not considered where a new trial was granted on other grounds. The same testimony may not necessarily recur during the new trial.

Appeal by defendants John David Riser, P.A. and McDowell Emergency Physicians, P.L.L.C. from judgment entered 14 November 2011 and order entered 14 October 2011 by Judge Joseph Crosswhite in McDowell County Superior Court. Heard in the Court of Appeals 28 November 2012.

*Elam & Rousseaux, P.A., by William R. Elam and William H. Elam, for plaintiff-appellee.*

*Carruthers & Bailey, P.A., by Joseph T. Carruthers, for defendant-appellants.*

CALABRIA, Judge.

John David Riser, P.A. ("Riser") and McDowell Emergency Physicians, P.L.L.C. (collectively, "defendants") appeal from a judgment entered upon a jury verdict finding defendants liable for medical malpractice for their treatment of Aziza Katy ("Mrs. Katy") and awarding

Riadh Katy, as administrator of the Estate of Mrs. Katy ("plaintiff"), monetary damages and costs. Defendants are entitled to a new trial.

## I. Background

On 9 February 2008, Mrs. Katy gave birth to twins at McDowell Hospital in Marion, North Carolina. Two days later, Dr. Richard Salsman ("Salsman"), Mrs. Katy's obstetrician, ordered an abdominal x-ray that indicated Mrs. Katy could be suffering from pneumonia. Mrs. Katy was treated with antibiotics and discharged on 13 February 2008. On 15 February 2008, Mrs. Katy experienced shortness of breath and went to Salsman's office for treatment. Salsman referred her to the McDowell Hospital Emergency Room ("the ER") for further evaluation. After Dr. Keven Chung ("Chung") and Dr. David Craig ("Craig") reviewed Mrs. Katy's frontal and lateral chest x-rays, she was diagnosed with pneumonia, given a different class of antibiotics, and discharged from the ER the same day.

On 22 February 2008, Mrs. Katy returned to the ER, complaining of shortness of breath. Riser, a physician's assistant in the ER, briefly examined her and then ordered a flu swab, strep test, and a chest x-ray. The flu swab and strep test were negative. Riser consulted with Dr. Michael Capriola ("Capriola") about the chest x-ray. Both believed Mrs. Katy suffered from pneumonia. Riser prescribed an antibiotic that provided broader coverage than the one she had previously taken and then discharged her with instructions to return to the ER if her symptoms continued and/or worsened.

Mrs. Katy's 22 February 2008 chest x-ray was not officially interpreted until Monday, 25 February 2008, because there were no radiologists on duty at McDowell Hospital from Friday evening until Monday morning. When a radiologist interpreted the chest x-ray, his diagnosis was different from that of Riser and Capriola. After reviewing Mrs. Katy's x-ray, the radiologist provided the ER with a report that, in his opinion, Mrs. Katy was probably suffering from worsening congestive heart failure. On 27 February 2008, Chung received the radiologist's report and instructed one of the ER nurses to contact Mrs. Katy with a warning that she should see her primary care physician "ASAP." The nurse called and left a voicemail message for Mrs. Katy that day and spoke to plaintiff on 28 February 2008. Plaintiff was unable to schedule a visit with a cardiologist or internist until mid-March, and so the nurse recommended returning to the ER. Although Mrs. Katy was feeling badly and wanted to go to the ER, plaintiff convinced her to wait. On 1 March 2008, Mrs. Katy returned to McDowell Hospital and was admitted. On 2 March 2008,

she was transferred to Mission Hospital ("Mission") in Asheville. On 4 March 2008, Mrs. Katy suffered an embolus to her kidney, and the doctors at Mission began coagulation therapy. On 7 March 2008, Mrs. Katy suffered a stroke. Thereafter, she continued to decline until her death on 23 March 2008. According to Mrs. Katy's death certificate, her death was a result of complications from her stroke.

Plaintiff filed this action in his capacity as administrator of Mrs. Katy's estate on 18 May 2009. Plaintiff's complaint alleged medical malpractive by Capriola, Chung, Riser, and others at McDowell ER in negligently delaying the diagnosis of Mrs. Katy's congestive heart failure and further alleged that the delay caused or contributed to her subsequent stroke and death.

Beginning 29 August 2011, plaintiff's claims were tried by a jury in McDowell County Superior Court. On 13 September 2011, the jury returned a verdict finding that Mrs. Katy's death was not caused by any negligence on the part of Capriola and Chung. However, the jury found that Mrs. Katy's death was caused by the negligence of Riser and awarded plaintiff damages in the amount of $667,000. On 15 September 2011, defendants filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial. The trial court denied both motions, but reduced the damage award based upon a settlement between plaintiff and McDowell Hospital. Final judgment was entered on 14 November 2011. Defendants Riser and McDowell Emergency Physicians, P.L.L.C. appeal.

## II. Standard of Care Testimony

Defendants argue that the trial court erred in ruling that Capriola, who was permitted to offer an opinion on the standard of care with respect to his own decisions regarding Mrs. Katy's treatment, was not permitted to offer a standard of care opinion with respect to Riser. We agree.

[1] Generally, standard of care testimony is limited to whether a particular medical care provider's actions conformed "to the standard of professional competence and care customary in similar communities among [medical care providers] engaged in his field of practice." *Whitehurst v. Boehm*, 41 N.C. App. 670, 674, 255 S.E.2d 761, 765 (1979). Because the practice of medicine ordinarily requires highly specialized knowledge beyond that of the average person, the applicable standard of care in a medical malpractice case must be established through expert testimony. *Leatherwood v. Ehlinger*, 151 N.C. App. 15, 20, 564 S.E.2d 883, 886 (2002).

Expert testimony is governed by Rule 702 of the North Carolina Rules of Evidence, which provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2011). Pursuant to Rule 702(d),

> a physician who qualifies as an expert under subsection (a) of this Rule and who by reason of active clinical practice or instruction of students has knowledge of the applicable standard of care for . . . physician assistants . . . may give expert testimony in a medical malpractice action with respect to the standard of care of which he is knowledgeable of . . . physician assistants licensed under Chapter 90 of the General Statutes. . . .

N.C. Gen. Stat. § 8C-1, Rule 702(d) (2011). Thus, under this Rule, a physician may testify regarding the applicable standard of care for a physician assistant if the physician "is familiar with the experience and training of the defendant and either (1) the physician is familiar with the standard of care in the defendant's community, or (2) the physician is familiar with the medical resources available in the defendant's community and is familiar with the standard of care in other communities having access to similar resources." *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 478, 624 S.E.2d 380, 384 (2006) (quoting *Barham v. Hawk*, 165 N.C. App. 708, 712, 600 S.E.2d 1, 4 (2004), *aff'd per curiam by an equally divided court*, 360 N.C. 358, 625 S.E.2d 778 (2006)). "[T]he trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984).

In the instant case, Capriola testified that he was licensed to practice medicine in North Carolina. Additionally, he stated that he treated

ER patients as a physician in Maine from 2001 to 2004, completed a family practice residency at Wake Forest, and was board certified in family medicine, a practice specialty which also includes emergency medicine. By virtue of this educational and professional background, Capriola possessed the qualifications necessary to testify as an expert under Rule 702.

Although the trial court did not formally recognize Capriola as an expert, it nonetheless allowed Capriola to offer expert testimony by permitting him to offer a standard of care opinion with respect to his treatment of Mrs. Katy. Specifically, Capriola was able to testify, without objection, that he complied with the applicable standard of care when he interpreted Mrs. Katy's chest x-ray and discharged her. Capriola testified that he used his best judgment consulting with Riser regarding his evaluation and diagnosis of Mrs. Katy. He also stated that he used "reasonable care and diligence in the application of [his] knowledge and skill" in his evaluation and diagnosis of Mrs. Katy. By allowing Capriola to testify regarding whether his treatment of Mrs. Katy complied with the applicable standard of care, the trial court implicitly allowed Capriola to testify as an expert under Rule 702(a). *See Cato Equipment Co. v. Matthews*, 91 N.C. App. 546, 552, 372 S.E.2d 872, 876 (1988)("[I]n the absence of a request by the appellant for a finding by the trial court as to the qualification of a witness as an expert, it is not essential that the record show a specific finding on this matter, the finding being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness." (citation omitted)).

After the court allowed Capriola to testify regarding his own standard of care, it refused to allow him to testify as to whether Riser complied with the standard of care for physician assistants. The trial court provided no basis for the exclusion of Capriola's expert testimony regarding Riser's standard of care on the record, and we can discern no logical reason why it did so. Capriola worked directly with Riser and testified on *voir dire* that he was familiar with the standard of care for physician assistants. Therefore, he met the requirements to testify regarding Riser's standard of care under Rule 702(d). Since Capriola was equally qualified to give an expert opinion regarding both his own standard of care and Riser's standard of care under Rule 702, the trial court abused its discretion by requiring Capriola to limit his testimony to his own standard of care.

At trial and in his brief, plaintiff argues that since Capriola could not be formally recognized as an expert witness in the presence of the jury pursuant to our Supreme Court's opinion in *Sherrod v. Nash General Hosp., Inc.*, 348 N.C. 526, 500 S.E.2d 708 (1998), he could not offer expert

testimony at trial regarding Riser's standard of care. However, neither Rule 702 nor any cases from this Court require a formal recognition of a witness as an expert in the presence of the jury before the expert may provide opinion testimony. *See Waynick Constr. v. York*, 70 N.C. App. 287, 292, 319 S.E.2d 304, 307 (1984)("[A] formal tender [of a witness as an expert] is not an essential prerequisite to eliciting an opinion."); *Cato*, 91 N.C. App. at 552, 372 S.E.2d at 876.

Furthermore, contrary to plaintiff's contentions, Sherrod does not support his argument. In *Sherrod*, the defendant testified as an expert in his own defense, and the trial court declared to the jury, "I find that the [defendant physician] is an expert in the field of general psychiatry. He will be permitted to testify as to such matters touching upon his expertise." *Id.* at 532, 500 S.E.2d at 712. Our Supreme Court held that the trial court's statement was prejudicial error because the statement amounted to "an expression of opinion by the court with reference to the professional qualifications of the defendant" and "[t]he slightest intimation from the judge as to the weight, importance or effect of the evidence has great weight with the jury." *Id.* at 532-33, 500 S.E.2d at 712 (citations omitted). Nevertheless, the Court made clear that the defendant could have testified as an expert so long as the trial court did not make an announcement to the jury regarding his expertise. *Id.* at 533, 500 S.E.2d at 713. In the instant case, defendants only sought to have Capriola testify as an expert on behalf of Riser; they made no attempt to have the trial court recognize him as an expert in the presence of the jury. Thus, Capriola's excluded testimony would not have violated the rule articulated in *Sherrod*.

It is possible that the trial court excluded Capriola's expert testimony regarding Riser's standard of care for a physician assistant based upon plaintiff's flawed argument at trial that the lack of formal recognition before the jury precluded Capriola from testifying as an expert. If so, then the trial court's action was based on a misapprehension of the law and was erroneous. *See Maloney v. Hosp. Sys.*, 45 N.C. App. 172, 179-80, 262 S.E.2d 680, 684 (1980)(Holding that the trial court's exclusion of expert testimony due to a misapprehension of the law constituted reversible error). Ultimately, Capriola should have been permitted to testify at trial regarding Riser's adherence to the standard of care for physician assistants.

Nevertheless, plaintiff contends that the trial court's exclusion of Capriola's testimony was not prejudicial to defendants, because it was merely cumulative. However, during plaintiff's closing argument, plaintiff's counsel specifically emphasized to the jury that defendants had

presented "only one expert," Dr. James Hoekstra, who testified that Riser had not breached the standard of care. By making a point to emphasize that only one expert testified on behalf of Riser, plaintiff magnified the importance of Capriola's excluded testimony. In *Barham v. Hawk*, this Court found that the defense counsel's emphasis on improperly admitted expert testimony during his closing argument was prejudicial error, because the defendant's emphasis indicated the importance of the testimony to the outcome of the case.[1] 165 N.C. App. at 718, 600 S.E.2d at 7. Similarly, in the instant case, plaintiff's emphasis on defendants' presentation of "only one expert" demonstrates the importance of Capriola's testimony to the determination of whether Riser's treatment met the standard of care for physician assistants.

In addition, we note that Capriola was Riser's supervising physician and worked directly with him in evaluating and diagnosing Mrs. Katy. Consequently, his opinion as to Riser's performance would potentially carry great weight with a jury tasked with determining whether Riser was negligent. Based upon these considerations, we must conclude that the trial court erred by excluding Capriola's testimony and "a different result would have likely ensued had the error not occurred." *Suarez v. Wotring*, 155 N.C. App. 20, 30, 573 S.E.2d 746, 752 (2002). Accordingly, the exclusion of Capriola's testimony was prejudicial error and we must grant defendants a new trial.

### III. Contributory Negligence

[2] While we have granted defendants a new trial, we still address additional issues raised by defendants that could reoccur during the new trial. Defendants also contend that the trial court erred in granting a directed verdict in favor of plaintiff on the issue of contributory negligence. We agree.

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). "A directed verdict for the plaintiff on the issue of his contributory negligence must be sustained by the appellate court unless there is substantial evidence the plaintiff's negligence was a proximate cause of his injuries." *Andrews v. Carr*, 135 N.C. App. 463, 467, 521 S.E.2d 269, 272 (1999). "If there is more than a scintilla of evidence that plaintiff is contributorily negligent, the issue is

---

1. While the opinion in *Barham* has no precedential value, we find its prejudicial error reasoning persuasive.

a matter for the jury, not for the trial court." *Cobo v. Rata*, 347 N.C. 541, 545, 495 S.E.2d 362, 365 (1998).

Defendants cite our Supreme Court's decision in *McGill v. French* in support of their argument. In *McGill*, the plaintiff alleged that the defendant had committed medical malpractice by failing to inform him that he had prostate cancer, which eventually resulted in his death. 333 N.C. 209, 215, 424 S.E.2d 108, 112 (1993). Our Supreme Court held that the trial court properly submitted the issue of the plaintiff's contributory negligence to the jury based upon evidence that the plaintiff had failed to keep appointments and report his worsening symptoms to the defendant "during a crucial time of his illness." *Id.* at 220, 424 S.E.2d at 114. In a subsequent case, the Supreme Court explained that "[i]n *McGill*, this Court noted that a patient has an active responsibility for his own care and well-being." *Cobo*, 347 N.C. at 546, 495 S.E.2d at 366.

In response, plaintiff contends that the instant case is controlled by this Court's opinion in *Andrews*. In that case, the plaintiff engaged in activities contrary to the defendant-physician's post-operation instructions after undergoing a negligent hernia operation. 135 N.C. App. at 468, 521 S.E.2d at 273. The *Andrews* Court upheld the entry of a directed verdict in favor of the plaintiff on the issue of contributory negligence, reasoning that because the plaintiff's activities occurred subsequent to the completion of the defendant's negligent treatment, they did not constitute contributory negligence. *Id.* Plaintiff argues that *Andrews* controls because any alleged negligence on the part of Mr. and Mrs. Katy only occurred five days subsequent to Riser's negligent treatment.

The evidence presented at trial showed that Mrs. Katy had been experiencing symptoms since the birth of her twins. On 19 February 2008, Salsman assessed Mrs. Katy with "resolving pneumonia," and she presented to the ER three days later because her symptoms had worsened. Upon being diagnosed with pneumonia and discharged with a second round of antibiotics on 22 February 2008, Mrs. Katy was instructed to contact her doctor or return to the ER if she did not feel better or developed new symptoms. These instructions demonstrate that, unlike the plaintiff in *Andrews*, Mrs. Katy's treatment for her condition was not completed and that she potentially required further treatment if her condition either did not improve or worsened.

However, when Mrs. Katy's condition continued to deteriorate, she failed to immediately seek medical attention. Instead, despite the explicit instructions from the ER physicians, Mrs. Katy delayed reporting her symptoms until 1 March 2008 when she returned to the ER.

Mrs. Katy's actions provide more than a scintilla of evidence that she, like the plaintiff in *McGill*, failed to take "an active responsibility for h[er] own care and well-being[,]" *Cobo*, 347 N.C. at 546, 495 S.E.2d at 366, "during a crucial time of h[er] illness." *McGill*, 333 N.C. at 220, 424 S.E.2d at 114. Accordingly, this issue should have been presented to the jury, and the trial court erred in granting plaintiff's motion for a directed verdict on defendants' contributory negligence claim.

## IV. Special Jury Instruction

**[3]** Defendants argue that the trial court erred in failing to instruct the jury that plaintiff had the burden to prove more than a mere increased chance of recovery and survival in order to establish proximate cause. We agree.

> When reviewing the refusal of a trial court to give certain instructions requested by a party to the jury, this Court must decide whether the evidence presented at trial was sufficient to support a reasonable inference by the jury of the elements of the claim. If the instruction is supported by such evidence, the trial court's failure to give the instruction is reversible error.

*Ellison v. Gambill Oil Co.*, 186 N.C. App. 167, 169, 650 S.E.2d 819, 821 (2007) (citations omitted), *aff'd per curiam and disc. rev. improvidently allowed*, 363 N.C. 364, 677 S.E.2d 452 (2009).

> A specific jury instruction should be given when "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury."

*Outlaw v. Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008) (quoting *Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002)).

In the instant case, defendants requested that the following special instruction be added to the pattern jury instruction on proximate cause:

> It is not enough for plaintiff to show that earlier hospitalization of Aziza Katy would have improved her chances of survival and recovery. Rather, plaintiff must prove that it is probable that a different outcome would have occurred with earlier hospitalization. Plaintiff must prove by the

greater weight of the evidence that the alleged delay in hospitalization more likely than not caused the stroke and death.

Defendants' requested instruction was based upon this Court's opinion in *White v. Hunsinger*, 88 N.C. App. 382, 363 S.E.2d 203 (1988). In *White*, the Court affirmed the trial court's entry of summary judgment in favor of the defendant-physician because

> [the] plaintiff could not prevail at trial by merely showing that a different course of action would have improved [the decedent]'s chances of survival. Proof of proximate cause in a malpractice case requires more than a showing that a different treatment would have improved the patient's chances of recovery.
>
> . . .
>
> [The] plaintiff has failed . . . to forecast any evidence showing that had [the defendant] referred [the decedent] to a neurosurgeon when [the decedent] was first brought to the hospital, [the decedent] would not have died. The connection or causation between the negligence and death must be probable, not merely a remote possibility.

*Id.* at 386-87, 363 S.E.2d at 206. Defendants' requested instruction is consistent with this language from *White*, and thus, as a correct statement of the law, meets the first prong of the test for a special instruction.

The second prong of the test was also met, as there was evidence presented at trial that would have supported the special instruction. Although plaintiff points to evidence sufficient to show that a different outcome probably would have occurred with earlier hospitalization, the record also contains evidence that would allow the jury only to find that earlier hospitalization would have possibly given Mrs. Katy an improved chance of survival.

Finally, we must determine if "the instruction given, considered in its entirety, failed to encompass the substance of the law requested and . . . such failure likely misled the jury." *Outlaw*, 190 N.C. App. at 243, 660 S.E.2d at 559 (internal quotation and citation omitted). In the instant case, the trial court instructed the jury by utilizing the pattern jury instruction on proximate cause:

> The plaintiff not only has the burden of proving negligence, but also that such negligence was a proximate

cause of Aziza Katy's death. Proximate cause is a cause which in a natural and continuous sequence produces a person's injury and is a cause which a reasonable and prudent health care provider would have foreseen would probably produce such injury or similar injurious result. There may be more than one proximate cause of an injury. Therefore, the plaintiff need not prove that the defendant's negligence was the sole proximate cause of Aziza Katy's death. The plaintiff must prove by the greater weight of the evidence only that the defendant's negligence was a proximate cause.

While this instruction accurately defines proximate cause, it does not make clear to the jury that "[p]roof of proximate cause in a malpractice case requires more than a showing that a different treatment would have improved the patient's chances of recovery." *White*, 88 N.C. App. at 386, 363 S.E.2d at 206. At trial, there was a significant amount of conflicting testimony as to whether the eight-day delay in Mrs. Katy's treatment proximately caused her injuries. Plaintiff presented multiple witnesses who testified that Mrs. Katy's risk of stroke increased due to the delay, and defendants also presented multiple witnesses who testified that the delay in Mrs. Katy's treatment made no difference. Thus, it was a disputed issue as to whether or not it was probable that Mrs. Katy's risk of stroke increased due to the delay in her treatment. Under such circumstances, the trial court's failure to give the jury a more specific instruction on the disputed proximate cause issue likely misled the jury. Consequently, the trial court's failure to give defendants' requested special instruction was error.

## V. Admissibility of Plaintiff's Remarriage

[4] Finally, defendants argue that the trial court erred by granting plaintiff's motion *in limine* to exclude evidence of plaintiff's remarriage for purposes of mitigating plaintiff's damages. We disagree.

"A motion *in limine* seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial; its determination will not be reversed absent a showing of an abuse of the trial court's discretion." *Warren v. Gen. Motors Corp.*, 142 N.C. App. 316, 319, 542 S.E.2d 317, 319 (2001).

Pursuant to N.C. Gen. Stat. § 28A-18-2(b), damages for wrongful death include, *inter alia,*

(4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;

    a. Net income of the decedent,

    b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,

    c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

N.C. Gen. Stat. § 28A-18-2(b) (2011). The statute further provides that "[a]ll evidence which reasonably tends to establish any of the elements of damages included in subsection (b), or otherwise reasonably tends to establish the present monetary value of the decedent to the persons entitled to receive the damages recovered, is admissible in an action for damages for death by wrongful act." N.C. Gen. Stat. § 28A-18-2(c) (2011).

Both parties acknowledge that there is no North Carolina case which discusses the admissibility of remarriage of the surviving spouse in an action for wrongful death. However, North Carolina has long adhered to the collateral source rule, which "provides '[a] tort-feasor [sic] should not be permitted to reduce his own liability for damages by the amount of compensation the injured party receives from an independent source.'" *Muscatell v. Muscatell*, 145 N.C. App. 198, 201, 550 S.E.2d 836, 837-38 (2001)(quoting *Fisher v. Thompson*, 50 N.C. App. 724, 731, 275 S.E.2d 507, 513 (1981)). We find this rule requires the exclusion of evidence of plaintiff's remarriage in the instant case. Defendants should not be permitted to reduce their liability for the damages caused by Mrs. Katy's death simply because plaintiff has remarried. Indeed, many jurisdictions have used the collateral source rule as a justification to exclude evidence of remarriage by the decedent's spouse in a wrongful death action. *See, e.g., Seaboard Coast Line R.R. Co. v. Hill*, 270 So.2d 359, 360-61 (Fla. 1972); *Westfall v. Caterpillar, Inc.*, 821 P.2d 973, 979 (Idaho 1991); *Pape v. Kansas Power and Light Co.*, 647 P.2d 320, 324-25 (Kan. 1982); *Addair v. Bryant*, 284 S.E.2d 374, 380 (W.Va. 1981). Thus, we conclude that the trial court properly excluded evidence of plaintiff's remarriage.

**[5]** Defendants also argue that, even if evidence of plaintiff's remarriage was inadmissible, plaintiff "opened the door" to testimony regarding his remarriage during his testimony at trial. However, defendants' argument

is based upon plaintiff's specific testimony at trial, and this same testimony will not necessarily reoccur during the new trial. Consequently, we do not address this portion of defendants' argument.

### VI. Conclusion

The trial court erred in excluding testimony from Capriola regarding his opinion with respect to Riser's standard of care as a physician assistant in treating Mrs. Katy. The trial court also erred in failing to submit the issue of contributory negligence to the jury and in denying defendants' request for a special jury instruction. The trial court properly excluded evidence of plaintiff's remarriage for the purposes of calculating plaintiff's damages. Due to the trial court's prejudicial errors, we must remand for a new trial.

New Trial.

Judges BRYANT and GEER concur.