GLORIA BARHAM, Administratrix of the Estate of Billy Melvin Barham, Plaintiff
v. RODNEY J. HAWK, M.D. and HENDERSONVILLE EAR NOSE & THROAT,
P.A., Defendants

No. COA02-1393

(Filed 17 August 2004)

1. **Medical Malpractice— expert testimony—standard of care—opinion**

    The trial court abused its discretion in a medical malpractice case by admitting the testimony of one of decedent's treating doctors that amounted to an opinion as to defendant doctor's compliance with the relevant standard of care, and the case is remanded for a new trial, because: (1) defendants failed to establish that the testifying doctor was familiar with the standard of care in Hendersonville, North Carolina or similar communities and failed to show the doctor had any knowledge of the resources available in Hendersonville sufficient to be able to testify about the standard of care in similar communities; (2) the doctor's only foundation was oral representations by counsel unsupported by evidence and made in the middle of the trial; and (3) there was no indication in the record that the doctor would have personal knowledge of the standard of care in any similar community.

2. **Discovery— medical malpractice—failure to comply with discovery order—sanctions**

    The trial court erred in a medical malpractice case by barring the expert testimony of a doctor who examined decedent's ear following surgery by defendant doctor based on plaintiff's failure to designate the doctor earlier as an expert witness, and the case is remanded for a new trial with instructions to weigh whether any unfair prejudice outweighs the probative value of the pertinent testimony, even though plaintiff's designation limiting treating physician testimony to diagnosis, care, and treatment of decedent was insufficient to advise defendants that plaintiff might call the pertinent doctor to give standard of care testimony, because: (1) the trial court could not have excluded the testimony under N.C.G.S. § 1A-1, Rule 26(f1) or Rule 37(b)(2) as a sanction since plaintiff's voluntary dismissal of the case nullified a 1998 consent discovery order meaning there was no discovery order in effect to violate; and (2) plaintiff did not fail to comply with any obligation under N.C.G.S. § 1A-1, Rule 26(e) when defendants

failed to serve a general expert interrogatory that would have required identification of the pertinent doctor in a timely manner.

Appeal by plaintiff from judgment entered 21 March 2002 by Judge Marlene Hyatt in Polk County Superior Court. Heard in the Court of Appeals 21 August 2003.

*Blanchard, Jenkins, Miller & Lewis, P.A., by Robert O. Jenkins and E. Hardy Lewis; Feagan and Foster, by Phillip R. Feagan, for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Scott M. Stevenson and Meg Sohmer Wood, for defendants-appellees.*

GEER, Judge.

This appeal addresses the admissibility of expert testimony in a medical malpractice case. Plaintiff Gloria Barham appeals two rulings by the trial court, arguing that (1) the trial court erroneously admitted standard of care testimony by Dr. Danko Cerenko; and (2) the court improperly barred the expert testimony of Dr. Eric Kraus, who examined her husband's ear following surgery by defendant Dr. Rodney J. Hawk. We hold that the trial court erroneously allowed Dr. Cerenko to give testimony amounting to an opinion as to defendant Dr. Hawk's compliance with the relevant standard of care when defendants had failed to establish that Dr. Cerenko was familiar with the standard of care in Hendersonville, North Carolina or similar communities. With respect to Dr. Kraus, we hold that the trial court could not have properly excluded his testimony as a sanction, but we do not reach the question whether the court abused its discretion under Rule 403 of the Rules of Evidence since this case must be remanded for a new trial.

## Factual Background

In 1994, Billy Melvin Barham was diagnosed with a cholesteatoma, a cyst-like growth, in his left ear. In June 1994, defendant Dr. Hawk of defendant Hendersonville Ear, Nose and Throat, P.A. performed a modified radical mastoidectomy designed to remove the cholesteatoma. Following the surgery, Mr. Barham stayed under the care of Dr. Hawk through October 1995.

On 4 December 1995, Mr. Barham met with Dr. Eric Kraus, an otolaryngologist who practices in Greensboro. After examining Mr. Barham, Dr. Kraus concluded that Dr. Hawk had performed an

BARHAM v. HAWK

[165 N.C. App. 708 (2004)]

"incomplete" removal of the cholesteatoma and otherwise improperly conducted the surgery. Dr. Kraus recommended that Mr. Barham undergo a second operation on his ear, but Mr. Barham declined, opting instead for antibiotic eardrops.

Mr. Barham did not return to see Dr. Kraus, but rather, in February 1996, went to Emory University Medical Center for treatment. Mr. Barham was admitted to that hospital in March 1996 for chronic meningitis and mastoiditis. Dr. Danko Cerenko, an Emory University ear, nose and throat specialist, operated on Mr. Barham's ear, but in May 1996, Mr. Barham died. Plaintiff Gloria Barham, Mr. Barham's wife and the administratrix of his estate, filed suit against Dr. Hawk and his clinic in June 1998, alleging that improper treatment by Dr. Hawk had resulted in chronic infection of her husband's left ear, which had in turn led to meningitis and his death.

On 14 September 1998, the parties entered into a Consent Discovery Order that set a deadline of 15 February 1999 for plaintiffs to "identify any and all expert witnesses whom they may call to testify at trial." On 15 February 1999, plaintiff identified by name three expert witnesses as potentially being called to testify at trial. On 5 December 2000, after plaintiff obtained additional counsel, the trial court granted plaintiff leave to designate two more medical experts. Defendant in turn identified three expert witnesses. None of the experts identified by name by the parties included Dr. Kraus.

Three weeks before trial, in February 2001, Dr. Hawk's daughter died unexpectedly. After the trial judge indicated he would not allow a continuance, the parties informally agreed to "continue" the case by having plaintiff voluntarily dismiss and refile the lawsuit. Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice on 19 February 2001, but refiled her claims on 2 March 2001. Counsel for both parties apparently verbally agreed to use all discovery materials obtained in the original suit and to abide by the 1998 Consent Discovery Order. No order, however, was ever entered incorporating or effectively refiling the Consent Discovery Order in the new case.

Trial was scheduled in the refiled case for the 19 February 2002 session in Polk County Superior Court. A few weeks prior to trial, plaintiff's new attorney telephoned Dr. Kraus for the first time and learned of Dr. Kraus' opinion that Dr. Hawk's surgery and treatment of Mr. Barham fell short of the applicable standard of care. Plaintiff's counsel notified defendants' attorney of Kraus' potential testimony, and, on 8 February 2002, defense counsel deposed Dr.

Kraus. On 13 February 2002, plaintiff took a *de bene esse* deposition of Dr. Kraus.

On the first day of trial, before Judge Marlene Hyatt, defendants moved *in limine* to exclude Dr. Kraus' testimony as a sanction under Rules 26(f1) and 37(b)(2)(b) and on the grounds that allowing plaintiff to designate a new expert witness 10 days before trial unfairly prejudiced defendants. The trial court stated, without further explanation, "I will allow the motion to exclude Dr. Krause's [sic] testimony." Although the trial court requested that a written order be prepared, one was never filed. Following the trial, the jury returned a verdict in favor of defendants. The trial court entered judgment in defendants' favor on 21 March 2002. Plaintiff has appealed from that judgment.

### Dr. Danko Cerenko's Testimony

[1] Dr. Danko Cerenko, one of Mr. Barham's treating physicians, was called to testify by defendants. Plaintiff objected to his rendering an opinion on Dr. Hawk's care on the grounds that defendants could not establish that Dr. Cerenko had knowledge of the applicable standard of care in Hendersonville, North Carolina or similar communities. After allowing voir dire by both parties, the trial court sustained plaintiff's objection; it allowed Dr. Cerenko to testify regarding his treatment of Mr. Barham, but not as an expert regarding the standard of care. During the course of Dr. Cerenko's testimony, however, the trial court allowed, over plaintiff's objection, certain testimony that plaintiff contends constituted standard of care testimony.

Plaintiff contends on appeal that the trial court erred in admitting the disputed testimony. Defendants, on the other hand, have cross-assigned error to the trial court's ruling that limited the scope of Dr. Cerenko's testimony. The issue underlying both plaintiff's and defendants' assignments of error is whether a proper foundation was laid for qualification of Dr. Cerenko as a standard of care expert. We find no error in the trial court's decision to preclude Dr. Cerenko from giving standard of care testimony, but hold that the testimony admitted by the trial court constituted improper standard of care testimony that should have been excluded.

We first turn to the question whether the trial court erred in refusing to allow Dr. Cerenko to testify as an expert on the standard of care in Hendersonville or similar communities. The competency of a witness to testify as an expert is addressed to the sound discretion of

the trial court and the trial court's determination will not be disturbed by the reviewing court in the absence of an abuse of discretion. *Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 653, 535 S.E.2d 55, 65 (2000), *disc. review denied*, 353 N.C. 370, 547 S.E.2d 2 (2001).

N.C. Gen. Stat. § 90-21.12 (2003) sets out the standard of care applicable in a medical malpractice action:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical . . . care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience *situated in the same or similar communities* at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (emphasis added). As Judge Greene explained in his concurring opinion in *Henry v. Southeastern OB-GYN Assoc., P.A.*, 145 N.C. App. 208, 213-14, 550 S.E.2d 245, 248-49 (Greene, J., concurring), *aff'd per curiam*, 354 N.C. 570, 557 S.E.2d 530 (2001), this statute permits a physician, otherwise qualified under Rule 702 of the North Carolina Rules of Evidence, to testify regarding the applicable standard of care in a medical malpractice case "when that physician is familiar with the experience and training of the defendant and either (1) the physician is familiar with the standard of care in the defendant's community, or (2) the physician is familiar with the medical resources available in the defendant's community and is familiar with the standard of care in other communities having access to similar resources."

The issue with respect to Dr. Cerenko is whether he demonstrated sufficient familiarity with (a) the standard of care in Hendersonville; or (b) the resources available in Hendersonville and the standard of care in communities having access to similar resources. In seeking on voir dire to lay a foundation for Dr. Cerenko's testimony, counsel for defendants posed a hypothetical question to Dr. Cerenko in which he asked the doctor to assume the truth of various facts relating to Dr. Hawk's experience and to Hendersonville, including the city's population, the size of its hospital, the number of physicians, and the number of specialists. He then asked:

Assuming the community I asked you to assume and the physician I asked you to assume, do you believe that you are familiar with the standards of practice for members of the same health care profession with similar training and experience situated in similar communities in that time frame?

Dr. Cerenko responded with a single sentence: "I am familiar with those standards."

On cross-examination, however, Dr. Cerenko stated that he knew nothing about Hendersonville, had no idea of the size of the community, knew nothing about the hospital in Hendersonville or its resources, and had no knowledge about the physicians practicing in the area. Plaintiff's counsel confirmed that Dr. Cerenko had received no information from any source regarding Hendersonville and its resources prior to hearing the hypothetical question:

Q: The sum total of what you know now about Hendersonville is what you just heard from [defense counsel].

A: That is correct.

Q: Correct? You were deposed by [defendants'] law firm, oh, it's been a long time ago now, two or three years ago?

A: I think in '99.

Q: At that time they asked you whatever questions they wanted to ask you, correct?

A: (Nods his head)

Q: They at that time did not ask you any questions about Hendersonville or find out any information about Hendersonville from you, did they?

A: I think that's correct, yes.

Plaintiff's counsel then asked Dr. Cerenko, "[Y]ou don't know if what [defense counsel] was asking you to assume [about Hendersonville] is correct or not, based upon your answers?" Dr. Cerenko answered, "Correct, right." This testimony establishes that Dr. Cerenko neither had any knowledge about the standard of care in Hendersonville nor had any knowledge of the resources available in Hendersonville sufficient to be able to testify about the standard of care in similar communities.

Defendants contend that Dr. Cerenko could still obtain the necessary information to have a basis for testifying from counsel's hypo-

thetical question. *Smith v. Whitmer*, 159 N.C. App. 192, 582 S.E.2d 669 (2003) forecloses that argument. In *Whitmer*, the doctor testified during a deposition that he was familiar with the standard of care in the community where defendants practiced although he had never practiced there himself. When asked to describe what he had done to familiarize himself with the relevant standard of care, he stated that he based his understanding of the nature of the community on statements of counsel that he could not specifically recall. He acknowledged that counsel did not supply him any written materials. In concluding that the doctor had failed to demonstrate that he was sufficiently familiar with the pertinent standard of care, the Court pointed out:

> [The doctor] offered no testimony regarding defendants' training, experience, or the resources available in the defendants' medical community. Although [the doctor] asserted that he was familiar with the applicable standard of care, his testimony is devoid of support for this assertion. In preparation for his deposition, [the doctor] stated that the sole information he received or reviewed concerning the relevant standard of care in [the community at issue] was verbal information from plaintiff's attorney regarding "the approximate size of the community and what goes on there." [The doctor] could offer no further details, however, concerning the medical community, nor could he actually remember what plaintiff's counsel had purportedly told him.

*Id.* at 196-97, 582 S.E.2d at 672.

If the foundation was inadequate in *Whitmer*, when the doctor had at least received some oral information from counsel prior to trial regarding the community at issue, then it cannot be sufficient if the doctor's only information is oral representations by counsel, unsupported by evidence, made in the middle of a trial. *See also Cox v. Steffes*, 161 N.C. App. 237, 244, 587 S.E.2d 908, 913 (2003) (the expert witness had reviewed written information concerning the relevant community prior to trial and had reviewed it again prior to testifying before the jury), *disc. review denied*, 358 N.C. 233, 595 S.E.2d 148 (2004); *Coffman v. W. Earl Roberson, M.D., P.A.*, 153 N.C. App. 618, 624, 571 S.E.2d 255, 259 (2002) (expert witness had obtained basis for testimony from Internet research about the size of the hospital and the programs at issue), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 111 (2003). At the point when the trial court was required to determine whether Dr. Cerenko was competent to testify, Dr.

Cerenko had no factual basis for stating that he was familiar with the relevant standard of care.

Defendants also contend that the trial court improperly "precluded" them from further inquiry into Dr. Cerenko's knowledge of communities similar to Hendersonville. Defendants overlook the fact that since Dr. Cerenko had no knowledge of the resources available in Hendersonville, he had no basis for stating that any other community was similar to it.

In addition, there is no indication in the record that Dr. Cerenko would have personal knowledge of the standard of care in any similar community. While counsel for defendants represented that Hendersonville has a population of 70,000, Dr. Cerenko has never worked in a community with a population lower than 1,000,000. Dr. Cerenko did testify that he saw patients in Atlanta from outlying communities, but counsel never attempted to identify those communities or their size. The record contains no basis for determining whether those communities were smaller than Hendersonville, larger than Hendersonville, or about the same. *Compare Cox*, 161 N.C. App. at 244, 587 S.E.2d at 913 (doctor believed hospital at issue was a level 2 hospital and he had previously practiced at a level 2 hospital; doctor also testified that the hospitals in the two communities were similar with respect to physicians, services, and equipment); *Leatherwood v. Ehlinger*, 151 N.C. App. 15, 22, 564 S.E.2d 883, 888 (2002) (doctor had practiced in Asheville as well as in communities similar in size to Asheville; he testified that Asheville and other communities that size have the same standard of practice), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 368 (2003).

Although after the voir dire hearing, counsel sought permission to ask additional questions regarding other communities when the jury returned, the trial court refused, stating: "We've plowed this ground. . . . [T]hat's what we had this hearing for." The trial judge was entitled to conclude that she had given counsel ample opportunity to lay his foundation, especially since further effort would likely be futile given Dr. Cerenko's acknowledged lack of knowledge of the resources available in Hendersonville.

As Judge McCullough concluded in *Henry*, if the doctor is "unfamiliar with the relevant standard of care, his opinion as to whether defendants met that standard is unfounded and irrelevant[.]" *Henry*, 145 N.C. App. at 213, 550 S.E.2d at 248. The trial court, therefore, properly barred Dr. Cerenko from giving standard of care testimony.

Plaintiff argues that the trial court nonetheless allowed Dr. Cerenko to testify as to the standard of care. The trial court allowed the following testimony over plaintiff's objection:

> Defense Counsel: Based upon your observations of Mr. Barham, preoperatively, as far as studies, perhaps CT scans, radiographic findings, things of that nature; as well as your intra-operative findings, were you in any fashion critical of the operation performed by Dr. Hawk?

> Plaintiff's Counsel: Objection, your honor.

> The Court: Overruled.

> Dr. Cerenko: *I was not critical of previously performed surgery.*

> Defense Counsel: And at some point did you tell them that? By "them" I mean [plaintiff's counsel].

> Dr. Cerenko: Yeah, we discussed the details and I was asked if I would consider those descriptions in my operative report as critical, and I said well, those were just the findings. *And we discussed how would somebody else do the surgery? How would I do the surgery? But this was not a criticism.* This was just an observation. *I was further asked if that was something that I would consider seeing performed by other surgeons, and I said, yes.*

> Plaintiff's Counsel: Objection. Motion to strike.

> The Court: Objection, overruled. Motion to strike denied.

> Defense Counsel: I'm sorry I missed that with the objection. *Did you say that was something you had seen done by other surgeons?*

> Dr. Cerenko: *The findings that I identified during the surgery are very common findings in doing revision surgery.*

(Emphasis added.)

We agree with plaintiff that this testimony constituted standard of care testimony that Dr. Cerenko was not qualified to give. Standard of care testimony is testimony regarding whether a particular doctor's actions conformed "to the standard of professional competence and care customary in similar communities among physicians engaged in his field of practice." *Whitehurst v. Boehm*, 41 N.C. App. 670, 674, 255 S.E.2d 761, 765 (1979). In this case, Dr. Cerenko did not merely testify

to what he observed when he performed the revision surgery on Mr. Barham's ear. He went further and testified that the results of Dr. Hawk's surgery were what he "would consider seeing performed by other surgeons," that they were "very common findings in doing revision surgery[,]" and that he "was not critical" of Dr. Hawk's surgery. In this testimony, Dr. Cerenko was expressing an opinion that Dr. Hawk's performance was in conformance with that of other surgeons from other unspecified communities. This testimony vouched for Dr. Hawk's professional competence in performing the surgery; it told the jury that Dr. Hawk had performed comparably to other surgeons. It was standard of care testimony and should have been excluded.

Even though the trial court erred in admitting this testimony, we must consider whether the error was harmless. "The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred." *Suarez v. Wotring*, 155 N.C. App. 20, 30, 573 S.E.2d 746, 752 (2002), *disc. review denied*, 357 N.C. 66, 579 S.E.2d 107 (2003). In light of the emphasis on Dr. Cerenko's opinions in defense counsel's closing argument, we cannot find the error harmless. The importance of the testimony is demonstrated by the fact that defense counsel had the court reporter transcribe that testimony—and only that testimony—prior to closing arguments. He then read the above-quoted portion of Dr. Cerenko's testimony to the jury and argued:

> If you want to take Holliday, Holmes, Howell, and Bogdasarian [all of the other expert witnesses] and just toss them all out the window, go back to Cerenko and ask, what did you see? Cerenko is the one doctor who saw Dr. Hawk's work, the one. . . . There was one doctor who saw the previously performed meatalplasty. There was one doctor who saw the mastoid air cells and how much cholesteatoma was taken out, and what did he say? "The findings that I have identified during the surgery are very common findings in doing revision surgery."

> And then he went on to say, "I was not critical of the previously performed surgery." This is the one doctor who was in a position to see and appreciate what Dr. Hawk did, and he was not critical.

> . . . .

> . . . And did he provide health care in accordance with the standards of practice? Absolutely, he absolutely did.

Dr. Cerenko had no criticisms of the previously performed surgery. And he was the one man who was in a position to see it.

Apart from Dr. Cerenko, the parties presented a battle of retained experts. As defense counsel stressed repeatedly in his closing argument, only Dr. Cerenko had actually been a treating physician and seen the result of Dr. Hawk's work firsthand. Because defendants relied so heavily on the portion of Dr. Cerenko's testimony that should have been excluded and used it for precisely the reason it should have been excluded—to establish that Dr. Hawk had complied with accepted standards of practice—we do not believe admission of this testimony was harmless error. We must, therefore, remand for a new trial.

## Dr. Kraus' Excluded Testimony

[2] Plaintiff sought to introduce the testimony of a treating physician, Dr. Eric Kraus, who also had the opportunity to examine the results of Dr. Hawk's surgery prior to Dr. Cerenko's operation. The trial court, however, excluded the testimony based on plaintiff's failure to designate him earlier as an expert witness. The trial court did not explain the basis for her ruling, simply stating: "I will allow the motion to exclude Dr. Krause's [sic] testimony."

Plaintiff first contends that the trial court erred in not finding that she sufficiently designated Dr. Kraus. Plaintiff points to her catch-all designation: "Plaintiff reserves the right to identify and/or call as expert witnesses any and all treating physicians of the Decedent, Billy Melvin Barham, to testify relative to their diagnosis, care and treatment of Billy Melvin Barham." In interrogatory answers, plaintiff had previously identified Dr. Eric Kraus as one of Mr. Barham's treating physicians. Because this designation limited treating physician testimony to "diagnosis, care and treatment of Billy Melvin Barham," the trial court could properly conclude that this designation was not sufficient to advise defendants that plaintiff might call Dr. Kraus to give standard of care testimony. We note that the trial court did not preclude Dr. Kraus from testifying as to his diagnosis, care, and treatment of Mr. Barham.

Plaintiff next contends that even if her designation was not sufficient, the trial court should not have excluded Dr. Kraus' testimony. Defendants, however, maintain that the trial court properly excluded Dr. Kraus' testimony as a sanction under Rule 26(f1) and Rule 37(b)(2)(b) of the North Carolina Rules of Civil Procedure. In medical

malpractice actions, Rule 26(f1) requires the entry of an order setting out a discovery schedule. It further provides: "If a party fails to identify an expert witness as ordered, the court shall, upon motion by the moving party, impose an appropriate sanction, which may include dismissal of the action, entry of default against the defendant, or exclusion of the testimony of the expert witness at trial." N.C.R. Civ. P. 26(f1). Rule 37(b)(2) permits the trial court to exclude evidence if "a party fails to obey an order to provide or permit discovery[.]" Both rules by their terms require violation of an order prior to imposition of sanctions.

Here, defendants contend that plaintiff violated the discovery order filed 14 September 1998 in the 1998 action. This order was not refiled in the case on appeal; nor was any order filed in the case providing that the 1998 Consent Discovery Order would apply in this case. Exclusion of Dr. Kraus' testimony under Rule 26(f1) as a sanction would be proper only if the 1998 Consent Discovery Order survived the dismissal and refiling of plaintiff's claims.

It is well established that once a plaintiff files a voluntary dismissal under Rule 41(a)(1) of the North Carolina Rules of Civil Procedure, "it [is] as if the suit had never been filed." *Tompkins v. Log Systems, Inc.*, 96 N.C. App. 333, 335, 385 S.E.2d 545, 547 (1989), *disc. review denied*, 326 N.C. 366, 389 S.E.2d 819 (1990). The refiling of the case within the one-year time limit of the rule "be[gins] [the] case anew for all purposes." *Id.* (prior order denying summary judgment was not binding in refiled case and did not preclude the trial court's granting summary judgment). As a result, the dismissal "carries down with it previous rulings and orders in the case." *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 464, 144 S.E.2d 393, 398 (1965) (*quoting* 11 A.L.R. 2d 1407, 1411). This Court has specifically held that an order under Rule 26 does not survive a voluntary dismissal without prejudice. *Doe v. Duke Univ.*, 118 N.C. App. 406, 408, 455 S.E.2d 470, 471 (1995) (a Rule 26 protective order "was nullified by plaintiff's dismissal").

Plaintiff's voluntary dismissal accordingly nullified the 1998 Consent Discovery Order. The parties could have entered into a consent order making the discovery order applicable in the refiled action, but did not do so. As a result, there was no order in effect and plaintiff did not "fail[] to identify an expert witness as ordered[.]" N.C.R. Civ. P. 26(f1). Nor did plaintiff fail "to obey an order to provide or permit discovery[.]" N.C.R. Civ. P. 37(b)(2). *See also Stilley v. Automobile Enter. of High Point, Inc.*, 55 N.C. App. 33, 38, 284 S.E.2d

BARHAM v. HAWK

[165 N.C. App. 708 (2004)]

684, 687 (1981) (A Rule 37(b)(2)(b) sanction "may only be imposed for failure of a party to comply with a court order compelling discovery."), *disc. review denied*, 305 N.C. 307, 290 S.E.2d 708 (1982). The trial court could not, therefore, have excluded Dr. Kraus' testimony under Rule 26(f1) or Rule 37(b)(2).

Defendants also contend that plaintiff "in making her designation of Dr. Kraus within two weeks of the trial date, failed to timely supplement her designation" and violated Rule 26(e) of the Rules of Civil Procedure. Rule 26(e)(1) (emphasis added), relating to supplementation of responses to requests for discovery, provides that "[a] party is under a duty seasonably to supplement his response *with respect to any question directly addressed to* . . . (ii) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony." Prior to concluding that plaintiff violated Rule 26(e), the trial court should first have determined whether defendants submitted a discovery request, such as an interrogatory, "requesting the identity of each person expected to be called as an expert witness at trial[.]" Defendants' interrogatories did not, however, include such an interrogatory. Instead, defendants asked plaintiff only to:

> State the name of each expert witness whom you have identified in accordance with Rule 9(j) of the Rules of Civil Procedure and/or in your Complaint as a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care provided to the decedent by the Defendants did not comply with the applicable standard of care.

This interrogatory was not a general expert interrogatory, but rather by its terms was limited to experts identified "in accordance with Rule 9(j)" or in the Complaint. Identification of Dr. Kraus was not required by this interrogatory. Because of defendants' failure to serve a general expert interrogatory, plaintiff did not fail to comply with any obligation under Rule 26(e).

Since there was no binding Rule 26(f1) order in effect and plaintiff did not violate Rule 26(e), there was no basis for excluding Dr. Kraus' testimony as a sanction. As defendants argued to the trial court, however, the testimony could still be excluded to avoid unfair prejudice to the defendants. The parties informally agreed that the 1998 Consent Order would govern the refiled action and defendants could appropriately argue that they were unfairly preju-

diced by plaintiff's attempt to designate an additional expert witness days before trial. Rule 403 of the North Carolina Rules of Evidence offers grounds upon which a court may exclude relevant testimony based on unfair prejudice:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.R. Evid. 403.

A trial court's decision to exclude evidence under Rule 403 is reviewed for an abuse of discretion. *State v. Grooms*, 353 N.C. 50, 72, 540 S.E.2d 713, 727 (2000), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54, 122 S. Ct. 93 (2001). We need not, however, in this appeal decide whether the trial court properly excluded Dr. Kraus' testimony under Rule 403. Any unfair prejudice arose out of the late identification of Dr. Kraus. Because we have remanded for a new trial, the trial court will need to weigh whether any unfair prejudice existing at the time of the new trial outweighs the probative value of Dr. Kraus' testimony.

New trial.

Judges BRYANT and CALABRIA concur.