IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-242

No. COA20-473

Filed 1 June 2021

New Hanover County, No. 17 CRS 3609

ESTATE OF ANTHONY FAZZARI by RUTH FAZZARI, Executrix; and RUTH FAZZARI, Plaintiffs,

v.

NEW HANOVER REGIONAL MEDICAL CENTER; WILMINGTON HEALTH, PLLC; SEJAL S. PATEL, M.D. and JOSHUA D. DOBSTAFF, M.D., Defendants.

Appeal by plaintiffs from orders entered 7 January 2020 and 13 January 2020 by Judge Phyllis M. Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 28 April 2021.

> *Chleborowicz Law Firm, PLLC, by Christopher A. Chleborowicz and Elijah A. T. Huston, for plaintiffs-appellants.*
>
> *Harris, Creech, Ward & Blackerby, P.A., by R. Brittain Blackerby and Terra N. Johnson, for defendant-appellee New Hanover Regional Medical Center.*
>
> *Walker, Allen, Grice, Ammons, Foy & Klick, LLC, by Jerry A. Allen, Jr., and Louis F. Foy, III, for defendants-appellees Wilmington Health, PLLC, Sejal S. Patel, M.D., and Joshua D. Dobstaff, M.D.*

ARROWOOD, Judge.

The Estate of Anthony Fazzari by Ruth Fazzari, Executrix, and Ruth Fazzari

(collectively, "plaintiffs") appeal from the trial court's orders granting all defendants'[1] (1) motions to dismiss; (2) motions to exclude plaintiffs' sole testifying and standard-of-care expert witness; and (3) summary judgment motions. For the following reasons, we affirm the trial court's order entered 7 January 2020 granting defendants' motions to dismiss pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure.

## I.  Background

At all times relevant, Anthony Fazzari ("decedent") was a 77-year-old man with a history of multiple myeloma and myelodysplastic syndrome. Decedent had been periodically admitted to defendant New Hanover Regional Medical Center ("NHRMC") for neutropenic fever and other complications related to multiple myeloma and myelodysplastic syndrome.

On 12 April 2016, NHRMC admitted decedent to the care of defendant Sejal S. Patel, M.D. ("Dr. Patel"), who noted that decedent presented signs of neutropenic fever and had the condition of "pancytopenia: chronic"—too few red blood cells, white blood cells, and platelets. Dr. Patel prescribed decedent 5,000 units of Heparin[2] every

---

[1] We will refer to all named defendants collectively unless otherwise noted.
[2] Heparin may reduce one's platelet count.

eight hours as a deep vein thrombosis ("DVT") prophylactic.[3]  Defendant Joshua D. Dobstaff, M.D. ("Dr. Dobstaff"), another provider for decedent at the time, was allegedly aware of decedent's depressed platelet count but did not take any action to mitigate the issue.  At all times relevant, Drs. Dobstaff and Patel were employed by defendant Wilmington Health, PLLC, and practicing as hospitalists when they provided inpatient care to decedent at NHRMC.

¶ 4        On the evening of his admission, blood testing indicated that decedent's platelet count was 24 K/uL, far below NHRMC's target level of 50 K/uL.  Given decedent's low platelet count, a secure electronic message was sent to David Schultz, M.D. ("Dr. Schultz"), regarding "critical lab value – Platelets 24" and for "review case."[4]   Notwithstanding the above, decedent was administered the previously prescribed dose of Heparin later that night.  Thereafter, at 5:44 a.m. on 13 April 2016, decedent's platelet count had dropped from 24 K/uL to 18 K/uL.  Notwithstanding this decrease, the orders for Heparin were not discontinued.  Plaintiffs allege that after reviewing the lab results reflecting the decrease in decedent's platelet count, neither Dr. Dobstaff nor Dr. Patel changed any orders (including the Heparin

---

[3] Plaintiffs allege that at the time of decedent's admission, his platelet count was "depressed indicating that Heparin as a DVT prophylaxis was an inappropriate course of treatment, particularly in light of pending chemotherapy which would further depress platelet counts."

[4] Dr. Schultz is not a defendant in this case.  Also, it is unclear whether there was any response to this secure electronic message.

prescription) and failed to take any other action to restore decedent's platelet count to target level. However, during the afternoon of 13 April 2016, a nurse refrained from administering the scheduled dose of Heparin noting in decedent's medical record that his platelet count was 18 K/uL.

¶ 5 At 3:42 a.m. on 14 April 2016, decedent's blood was again collected, and his platelet count was determined to be 20 K/uL. Shortly thereafter, decedent complained of a headache and requested medication. In light of these events, a NHRMC care provider sent another secured message to Dr. Schultz stating that decedent appeared confused, impulsive, disoriented, and was exhibiting slurred speech. It is unclear whether Dr. Schultz or any other hospitalists responded to or received these messages; plaintiffs allege that NHRMC did not have the correct information on file for these secure electronic messages which prevented the listed physician in the system from receiving the messages as he or she was not on call to receive or respond to the communications.

¶ 6 Later, a physician's assistant was notified about decedent's deteriorating condition. The Heparin order was discontinued approximately two hours later, around noon on 14 April 2016, and platelet therapy was initiated. After the initiation of platelet therapy, decedent began showing signs of stroke with a diagnosis of Acute Brain Hemorrhage or Intracerebral Hemorrhage ("ICH"). A computerized tomography scan was ordered, and the imaging confirmed that decedent was

suffering from an ICH. While decedent's platelet count had improved from the platelet therapy and blood transfusions, decedent was not an operative candidate for the ICH pressure. Decedent was then transferred to the Intensive Care Unit ("ICU") where he was treated until 20 April 2016, when decedent eventually succumbed to the ICH.

¶ 7 On 21 September 2017, plaintiffs filed a complaint against all defendants asserting claims for (1) professional negligence/wrongful death, (2) negligent infliction of emotional distress, and (3) loss of consortium. Pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure, plaintiffs certified that all of the medical records pertaining to defendants' negligence had been reviewed by a person who was reasonably expected to qualify under Rule 702 of the North Carolina Rules of Evidence.

¶ 8 On 30 May 2018, plaintiffs served responses to NHRMC's interrogatories. Plaintiffs' responses identified Arnold Rubin, M.D. ("Dr. Rubin"), as plaintiffs' Rule 9(j) expert. On 2 July 2019, plaintiffs served their designation of experts; plaintiffs' designation of experts likewise identified Dr. Rubin as plaintiffs' sole Rule 9(j) expert.

¶ 9 Defendants deposed Dr. Rubin on 5 November 2019. Following Dr. Rubin's deposition, defendants Wilmington Health, PLLC, Dr. Patel, and Dr. Dobstaff filed a motion to exclude Dr. Rubin from testifying as a standard-of-care expert pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure, Rule 702 of the North

Carolina Rules of Evidence, N.C. Gen. Stat. § 90-21.12, and other applicable law. These same defendants contemporaneously filed a motion to dismiss pursuant to "Rule 9, Rule 12, Rule 37, Rule 41 and Rule 56 of the North Carolina Rules of Civil Procedure" on the grounds that plaintiffs "failed to comply with the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure." NHRMC filed practically identical motions on 25 September 2019. The trial court heard oral argument on all motions on 2 December 2019.

¶ 10    Following the hearing, the trial court took the motions under advisement and subsequently granted all motions by entering the following orders: (1) "Order Granting Motions of All Defendants to Dismiss Pursuant to Rule 9(j)" on 7 January 2020; (2) "Order Granting Motions of All Defendants to Exclude Plaintiff's Standard of Care Expert Witness Dr. Arnold Rubin" on 13 January 2020; and (3) "Order Granting Motions of All Defendants for Summary Judgment" on 13 January 2020. Plaintiffs filed a notice of appeal of all three orders on 28 January 2020.

¶ 11    This appeal is properly before this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2019).

## A.    Rule 9(j) Certification

¶ 12    Because compliance with Rule 9(j) presents a question of law, this Court reviews whether the trial court properly dismissed a complaint under Rule 9(j) *de*

*novo. Est. of Wooden ex rel. Jones v. Hillcrest Convalescent Ctr., Inc.*, 222 N.C. App. 396, 403, 731 S.E.2d 500, 506 (2012) (citation omitted).

¶ 13        In a medical malpractice suit, a "plaintiff must show (1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998) (citation omitted). "Because questions regarding the standard of care for health care professionals ordinarily require highly specialized knowledge, the plaintiff must establish the relevant standard of care through expert testimony." *Smith v. Whitmer*, 159 N.C. App. 192, 195, 582 S.E.2d 669, 671-72 (2003) (citations omitted).

¶ 14        Rule 702 of the North Carolina Rules of Evidence governs the admission of expert testimony and states that a medical expert witness may qualify to give expert testimony as to the appropriate standard of care only if the person (1) is a licensed health care provider; (2) specializes in the same specialty or similar specialty as the party against whom the testimony is offered; and (3) during the year immediately preceding the date of the occurrence that is the basis for the action, devoted a majority of his time to the active clinical practice of the same health profession in which the party against whom the testimony is offered or the instruction of students in the same health profession in which the party against whom the testimony is offered. N.C. R.

Evid. 702(b)(1)-(2). When the requirements of Rule 702 are satisfied, the trial court must then determine whether the expert is "familiar with the experience and training of the defendant and either (1) the physician is familiar with the standard of care in the defendant's community, or (2) the physician is familiar with the medical resources available in the defendant's community and is familiar with the standard of care in other communities having access to similar resources." *Barham v. Hawk*, 165 N.C. App. 708, 712, 600 S.E.2d 1, 4 (2004) (citation and quotation marks omitted) (quoting another source).

¶ 15        Rule 9(j) of the North Carolina Rules of Civil Procedure requires that any complaint alleging medical malpractice by a health care provider that fails to comply with the applicable standard of care shall be dismissed unless:

> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care . . . .

N.C. R. Civ. P. 9(j)(1). Failure to adhere to the strict expert requirements set out in Rule 9(j) necessarily leads to dismissal. *Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002). Moreover, it is well settled that "even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery

subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate." *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008).

¶ 16        In the case at hand, plaintiffs could not have reasonably expected Dr. Rubin to qualify as an expert witness under Rule 702 such that he could proffer testimony that the medical care provided to decedent did not comply with the applicable standard of care. *See* N.C. R. Civ. P. 9(j)(1). Rule 9(j) incorporates by reference Rule 702(b) of the North Carolina Rules of Evidence, which permits a medical expert witness to give expert testimony as to the appropriate standard of care only if the person (1) is a licensed health care provider; (2) specializes in the same specialty or similar specialty as the party against whom the testimony is offered; and (3) during the year immediately preceding the date of the occurrence that is the basis for the action, devoted a majority of his time to the active clinical practice or the instruction of students in the same health profession in which the party against whom the testimony is offered. N.C. R. Civ. P. 9(j)(1); N.C. R. Evid. 702(b)(1)-(2). Per Rule 702(b), the appropriate standard of care to which the expert must reasonably be expected to testify is defined in N.C. Gen. Stat. § 90-21.12, which provides the following:

> [I]n any medical malpractice action as defined in G.S. 90-21.11(2)(a), the defendant health care provider shall not be liable for the payment of damages unless the trier of fact

finds by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action; or in the case of a medical malpractice action as defined in G.S. 90-21.11(2)(b), the defendant health care provider shall not be liable for the payment of damages unless the trier of fact finds by the greater weight of the evidence that the action or inaction of such health care provider was not in accordance with the standards of practice among similar health care providers situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12(a) (2019). Thus, plaintiffs must not only reasonably expect the putative expert witness to qualify under Rule 702(b), but they must also reasonably expect the witness to be able to testify as to the applicable standard of care set out in N.C. Gen. Stat. § 90-21.12(a). While the putative expert is not required to have practiced in the same community as defendant, the "witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care of similar communities." *Smith*, 159 N.C. App. at 196, 582 S.E.2d at 672 (citations omitted).

¶ 17        Here, plaintiffs could not have reasonably expected Dr. Rubin to qualify as an expert in this medical malpractice case for at least two reasons. We discuss each issue in turn.

### B.     Rule 702(b)(2) of the North Carolina Rules of Evidence

¶ 18     First, plaintiffs could not have reasonably believed that during the year immediately preceding the date of the occurrence that is the basis for this action, Dr. Rubin devoted a majority of his professional time to the active clinical practice of the same or similar health profession of Drs. Patel and Dobstaff (Internal and Hospitalist Medicine).  Nor could plaintiffs have reasonably believed that from April 2015 to April 2016, Dr. Rubin devoted a majority of his professional time to the instruction of medical students or residents in Internal and Hospitalist Medicine.  During his November 2019 deposition, Dr. Rubin confirmed that he retired from active clinical practice in 2013 and became a professor *emeritus* at Rutgers University thereafter. His teaching responsibilities included a monthly lecture to fellows training in hematology and oncology, one yearly lecture to first-year medical students, and "occasional lectures to other students[.]"  Notwithstanding the value of these teachings, it is clear that during the year immediately preceding the date of the occurrence that is the basis for this action (*i.e.*, April 2016), Dr. Rubin did not devote a majority of his professional time to the active clinical practice of the same or similar health professions of Drs. Patel and Dobstaff or to the instruction of medical students or residents in the same or similar specialty areas as Drs. Patel and Dobstaff.  Indeed, in the year preceding the events giving rise to this action, Dr. Rubin served as the medical director of a community blood center—a non-teaching position.  Thus, it is

clearly evident that Dr. Rubin did not devote a majority of his professional time to the instruction of *any* students or residents during the year preceding this case. In short, the trial court properly dismissed plaintiffs' complaint pursuant to Rule 9(j) as plaintiffs could not have reasonably expected Dr. Rubin to satisfy the requirement of Rule 702(b)(2) that he devote a majority of his professional time to the active clinical practice or instruction of students or residents in the same or similar health professions as Drs. Patel and Dobstaff. Because Dr. Rubin does not meet the practice-instruction requirement, we need not address the remaining requirements of Rule 702.

## C.     Review of Medical Records

In addition to plaintiffs' expert's failure to satisfy Rule 702(b)(2), the Rule 9(j) certification is defective in at least one other respect. Rule 9(j) requires certification in the operative pleading that "all medical records pertaining to the alleged negligence . . . have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 . . . ." N.C. R. Civ. P. 9(j)(1). Plaintiffs' putative expert, Dr. Rubin, admittedly reviewed only twenty-five percent of the relevant medical records related to decedent's April 2016 admission at NHRMC. It is undisputed that Dr. Rubin examined only the medical records related to decedent's admission at NHRMC between 12 April 2016 and 14 April 2016. He did not review any medical records for treatment and care between 15 April 2016 and 20 April 2016,

the date of decedent's death, although such documents were available to plaintiffs. Therefore, the trial court properly ruled that plaintiffs failed to comply with Rule 9(j). *See Fairfield v. WakeMed*, 261 N.C. App. 569, 574, 821 S.E.2d 277, 281 (2018) ("Allowing a plaintiff's expert witness to selectively review a mere portion of the relevant medical records would run afoul of the General Assembly's clearly expressed mandate that the records be reviewed in their totality. Rule 9(j) simply does not permit a case-by-case approach that is dependent on the discretion of the plaintiff's attorney or her proposed expert witness as to which of the available records falling within the ambit of the Rule are most relevant.").

¶ 20        Moreover, we disagree with plaintiffs' assertion that medical records dated after 14 April 2016 do not "pertain to the alleged negligence." Plaintiffs aver in their September 2017 complaint that after 14 April 2016, decedent's platelet count "improved significantly with the platelet therapy and blood transfusions." Plaintiffs assert that after 14 April 2016, decedent was treated in the ICU with platelet therapy and medications until his death on 20 April 2016. Certainly records reflecting any actions taken by defendants or their agents in the days after the discontinuation of Heparin and the days before decedent's death would be highly relevant and important to an expert's opinion on the matter. Thus, we find that medical records from 14 April 2016 through 20 April 2016 are highly relevant and material to the alleged negligence. Because said records were not reviewed by Dr. Rubin, we affirm the trial

court's conclusion that plaintiffs failed to satisfy the substantive pre-filing requirement of Rule 9(j) that Dr. Rubin review all medical records pertaining to the alleged negligence that were reasonably available to plaintiffs.

¶ 21        Because plaintiffs could not have reasonably believed that Dr. Rubin would qualify to testify as an expert under Rule 702 as he had not been actively practicing or teaching in the year prior to his designation, and because Dr. Rubin failed to review all medical records pertaining to the alleged negligence that were available to plaintiffs, and in light of the fact that Dr. Rubin was plaintiffs' sole expert witness, the trial court properly dismissed plaintiffs' complaint pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure. *See Smith*, 159 N.C. App. at 197, 582 S.E.2d at 673 (holding that exclusion of sole expert witness rendered plaintiff unable to establish essential element of malpractice claim and thus warranted judgment in favor of defendants).[5]

## III.    Conclusion

¶ 22        For the foregoing reasons, we affirm the trial court's order entered 7 January 2020 dismissing plaintiffs' complaint for failure to comply with the provisions of Rule 9(j) of the North Carolina Rules of Civil Procedure.

AFFIRMED.

---

[5] In light of our holding affirming the Rule 9(j) dismissal, we need not reach plaintiffs' remaining arguments nor review the trial court's additional orders.

Judges DILLON and WOOD concur.